THOMAS H. WILSON, Respondent, *v.* THE KINGS COUNTY ELEVATED RAILROAD COMPANY, Appellant.

Plaintiff, who was an expert in railroad building, at the request of S., who assumed to be defendant's chief engineer, and, under an arrangement between him, S. and two attorneys, who assumed to act as defendant's counsel, to the effect that plaintiff should have the contract for building defendant's road, devoted his time for about nine months and expended moneys for traveling expenses, for plans and specifications and other necessary expenses, preparatory to making the contract and doing the work. Plaintiff made and submitted to one of the attorneys his proposal to construct and equip the road. A proposed contract was drawn up, but plaintiff was informed by one of the attorneys it was deemed advisable to have the contract made by defendant with one D., and by the latter assigned to plaintiff, to which the latter assented. Up to this time S. and the attorneys had not been formally employed by defendant,

although their names appeared as holding the positions designated in a printed circular containing the names of the officers and directors of the company, and they were apparently treated as such officers. At a meeting of its board of directors thereafter, S. was appointed engineer, and the firm, in which one of said attorneys was a partner, was appointed as attorneys and counsel. At the same meeting a statement was made by a committee, to whom the matter had been submitted, setting forth, in substance, the negotiations with plaintiff, the proposed contract with D., and transfer thereof to plaintiff, drafts of which were submitted. The board assented to and approved the same, and agreed that, upon execution of the proposed agreement between plaintiff and D., the former should be accepted and recognized as fully subrogated to the rights and substituted as to the liabilities of D. under his contract, and defendant's officers were authorized to execute the contract on its part. Plaintiff was, however, without fault on his part, denied the contract, although able and willing to perform it. In an action to recover for plaintiff's services and expenses, *held*, that, by the action of defendant's board of directors the negotiations with plaintiff might be deemed to have been recognized, and, in some sense, treated as having been made on behalf of defendant; that plaintiff had a right to assume that the persons with whom he negotiated legitimately represented defendant; that this, together with the fact that the moneys expended, were for the benefit of defendant, justified a finding of an agreement between plaintiff and defendant that he should have the contract and that the services were rendered and expenses incurred at the request of defendant, and that such findings were sufficient to sustain a recovery.

Where evidence is received, the competency of which depends upon further evidence, upon the assurance of the party offering it that such further evidence will be supplied, in case of failure so to do the remedy is by motion to strike out the evidence received; in the absence of such a motion no question is presented for review upon appeal.

Plaintiff was permitted to put in evidence a book of memoranda made by him; this was objected to generally. *Held*, that as the memoranda might have been made competent by plaintiff's testimony verifying the entries as original and correct, and showing he was unable to recollect the items independent of the memoranda, the general objection was not well taken.

(Argued April 26, 1889; decided June 4, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 1, 1886, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought to recover for moneys expended

and services rendered by plaintiff at the alleged request of defendant, and for its use and benefit.

The facts, so far as material, are stated in the opinion.

*P. Mitchell* and *A. J. Skinner* for appellant.     The building of the road was the extraordinary business of the company, and any authority in respect to the making of the contract therefor must be specially conferred. (*Adriance* v. *Roome,* 52 Barb. 399; Angell on Corp. § 298; *W. R. R. Co.* v. *Boyne,* 11 Hun, 171; *Dabney* v. *Stevens,* 40 How. 341.)    A person holding the relation merely of attorney or counsel to the corporation, or that of chief engineer, could not bind the company by promises, or engagements in respect to matters outside the scope of his authority. (*People's Bk.* v. *St. A. R. C. Church,* 39 Hun, 500; *Woodruff* v. *R. & P. R. R. Co.,* 108 N. Y. 39; *Homersham* v. *W. W. W. Co.,* 6 Exch. 137; *Thayer* v. *V. C. R. R. Co.,* 24 Vt. 440; *Vanderwerker* v. *V. C. R. R. Co.,* 27 id. 125, 130; *Herrick* v. *Belknap,* Id. 673; Redfield on Railroads [5th ed.] 431, 433.)    The transaction between plaintiff and Lowrey, according to plaintiff's version, for the payment by plaintiff for the plans and specifications to be prepared by Sellers & Co., was substantially a borrowing transaction, and plaintiff cannot recover from the defendant company the money so advanced. (*Bickford* v. *Menier et al.,* 107 N. Y. 490; *Tucker* v. *Woolsey,* 64 Barb. 142.)    Plaintiff knew that Lowrey was only the attorney and counsel of the defendant, and he was chargeable with notice and knowledge of the scope of his authority. (*De Bost* v. *A. P. Co.,* 1 How. Pr. [N. S.] 501; *N. R. Bk.* v. *Aymar,* 3 Hill, 262; *Alexander* v. *Cauldwell,* 83 N. Y. 480; *Adriance* v. *Roome,* 52 Barb. 399, 411; *Martin* v. *Farnsworth,* 49 N. Y. 555.)    Officers of a corporation are special, not general, agents. (*Adriance* v. *Roome,* 52 Barb. 399, 411; *Martin* v. *Farnsworth,* 49 N. Y. 555; Grant on Corp. 55; Angell & Ames on Corp. 249; *Thurman* v. *W. F. Co.,* 18 Barb. 500.)    The principal is not bound by the acts of a special agent beyond his author-

ity, and corporations are not bound by acts of agents or officers outside the scope of their authority. (*Martin* v. *Farnsworth*, 49 N. Y. 555 ; *Munn* v. *Commission Co.*, 15 Johns. 44 ; *Beals* v. *Allen*, 18 id. 363 ; *De Bost* v. *A. P. Co.*, 1 How. Pr. [N. S.] 501 ; *Marine Bk.* v. *Clements*, 3 Bosw. 600 ; *Rossiter* v. *Rossiter*, 8 Wend. 494 ; *Craighead* v. *Peterson*, 72 N. Y. 279 ; *Alexander* v. *Cauldwell*, 83 id. 480.) And even if some benefit was voluntarily conferred on the corporation by plaintiff, that fact could not create any liability as against the corporation. ( *Woodruff* v. *Roch. & Pitts. R. R. Co.*, 108 N. Y. 46, 47.)

*James M. Townsend, Jr.*, for respondent. Assuming that neither Lowrey, Shea, Davison, Serrell, Gillmore, nor all of them together, had authority to bind the defendant, the fact that plaintiff's money and services were used for the corporate purposes for which they were furnished makes the defendant liable. (*Scott* v. *M. R. R. Co.*, 86 N. Y. 200 ; *Wild* v. *Mining Co.*, 59 id. 644 ; *Peterson* v. *Mayor, etc.*, 17 id. 449 ; *A. N. Bk.* v. *City of Albany*, 92 id. 363 ; *Booth* v. *F. and M. Bk.*, 50 id. 400, 401 ; *People's Bk.* v. *M. Nat. Bk.*, 101 U. S. 181.) The use of plaintiff's money and services by the defendant was an unqualified ratification. (*Murray* v. *Bininger*, 3 Keyes, 107 ; *Phillips* v. *Campbell*, 43 N. Y. 271 ; *Castle* v. *Lewis*, 78 id. 134, 135 ; *Bissel* v. *R. Co.*, 22 id. 264–267 ; *Parish* v. *Wheeler*, Id. 504 ; *Kent* v. *Mining Co.*, 78, id. 180 ; Ang. & Ames on Corp § 304.) As plaintiff, in pursuance of defendant's promise to give him a contract to build its road, performed the acts of service and expended his money, this constituted a valid and binding agreement to give him the contract. (*Marie* v. *Garrison*, 83 N. Y. 26 ; *Willets* v. *Sun Ins. Co.*, 45 id. 48 ; *White* v. *Baxter*, 71 id. 254 ; *L'Amoreux* v. *Gould*, 7 id. 349 ; Anson on Cont. 13, 84.) It will be presumed, in the absence of proof to the contrary, that the money was used for the purposes for which it was advanced and received, and the defendant will be assumed to have had the benefit of the services and money, and must pay for what it has had. (*Beers* v.

*Phœnix Co.*, 14 Barb. 358; Ang. & Ames on Corp. § 297.) The admission of the memorandum book, being harmless in every possible view, constitutes no ground for reversing the judgment. ( *Vandevoort* v. *Gould*, 36 N. Y. 614.)

BRADLEY, J. The defendant was organized as a corporation about the year 1879, and its purpose was to construct and operate an elevated railroad in the city of Brooklyn. The plaintiff in June, 1882, contemplated taking a contract for the construction of the road, and, with that view, thenceforward until in March, 1883, devoted his time and attention to the matter, and advanced and expended some money in that behalf preparatory to making of such contract and to the performance of the work of construction. He, having finally failed to obtain the contract, brought this action to recover the amount of money advanced and expended, and compensation for his services so rendered by him in contemplation of having the contract and the opportunity to perform it. The main question on the merits is, whether there was any agreement made with the plaintiff, by the defendant or by persons having authority to represent it in doing so, that he should be employed to do the work of construction of the road, and whether the plaintiff's services and money were bestowed and expended at the request of the defendant. The referee found those facts with the plaintiff, and that his services were rendered and the money paid out and expended by him in reliance upon such agreement of the defendant, and that on March 15, 1883, the plaintiff, without his fault, was duly notified to do and pay nothing further on account of the defendant, and the contract, which the defendant undertook to make with the plaintiff, was not made. The contention of the defendant's counsel is, that those findings of the referee had no support in the evidence. The defendant's purposes could be manifested only through agencies duly authorized or having apparent authority to represent it; and persons dealing with the officers of a corporation, or with persons assuming to represent it, are chargeable with notice of the purpose of its creation and its powers and with the

authority, actual or apparent, of its officers or agents with whom they deal; and when they seek to charge the corporation with liability upon a contract made apparently in its behalf, the burden is upon them to prove the authority of the person assuming to act as such officer or agent to so make it. (*Adriance* v. *Roome*, 52 Barb. 399; *Alexander* v. *Cauldwell*, 83 N. Y. 480; *Woodruff* v. *Rochester & P. R. R. Co.*, 108 id. 39.)

The question of authority was evidently one of some difficulty upon the evidence, but since the referee has found the requisite facts to support the conclusions of law, all reasonably permissible intendments will on this review, be allowed to sustain, so far as they may, his conclusions of fact. There is no direct proof of any pre-existing authority to represent the defendant in the persons with whom the plaintiff negotiated in the outset, or upon whose request he performed the services or advanced the money for the purposes of such negotiation or request; and whatever there is to support such authority rests in circumstances and future events, and in the inferences derivable from them. The attention of the plaintiff was first called to the subject of becoming contractor for the work by Mr. Serrell, who assumed to be the chief engineer of the defendant, and by whom the plaintiff was introduced to Mr. Lowrey, of the firm of Macfarland, Reynolds & Lowrey, who were said to be defendant's counsel, and with Serrell and Lowrey, and more especially with the latter, the plaintiff's negotiations were had. And in respect to making with the plaintiff the contract for the performance of the work, Judge Shea, also assuming to represent the defendant, took an active part. A proposed contract between the defendant and plaintiff, was in July, 1882, drawn by Lowrey and submitted by him to the plaintiff. It was not executed. The plaintiff was soon after informed by Judge Shea that for certain reasons it was advisable that the defendant's contract for the construction of the road be made with Henry J. Davison, and that the plaintiff should become the assignee of the contract, or sub-contractor, in such manner as to be subrogated to the rights of Davison

under the contract, to which the plaintiff assented. Upon that subject, to the same effect, some correspondence was had between Davison and the plaintiff, and between the latter and Lowrey. The plaintiff had in the meantime made in writing, and submitted to Lowrey, his proposal to construct and equip the road. At a meeting of the board of directors of the defendant, held September 13, 1882, a statement was made, on behalf of the committee, to whom the matter was submitted at a meeting of May, 1881, that the negotiations which had been conducted for many months had resulted in an arrangement, by which it was expected that the work might be commenced; that there was in contemplation a contract with Davison, who proposed to make with the plaintiff an agreement, the draft of which, with that proposed between the company and Davison, was submitted to the board, and after having considered them the board declared its approval of the latter, and, subject to the production of the certificate thereinafter mentioned of Judge SHEA, the board assented to and approved the proposed agreement between Davison and the plaintiff, and agreed that upon its execution he should be accepted, recognized and dealt with by the company as fully subrogated to the rights and substituted as to all the liabilities of Davison under the contract of the latter, and that such contract should become operative when Judge SHEA should deliver to the secretary of the company his certificate or opinion to the effect that the agreement was in order and should be executed by the company, and that the officers were thereupon authorized and instructed to execute the agreement and affix to it the corporate seal of the defendant. At the same meeting Mr. Serrell was appointed engineer, and Macfarland, Reynolds and Lowrey, attorneys and counsel for the company, upon terms mentioned in the resolution. And on the day following Mr. Lowrey forwarded to the plaintiff a copy of the portion of the resolution relating to the contracts of Davison with the company and himself. There does not appear to have been any formal appointment of engineer and counsel for the company until done by those resolutions; but the persons therein named as

such were before then so designated as engineer and counsel in a printed circular, which purported to also contain the names of the officers and directors of the company, and they were apparently so treated. By those resolutions the negotiations with the plaintiff in relation to the contract for the work may be deemed to have been recognized and in some sense treated as having been had with him in behalf of the company, and they bear somewhat upon the authority of Serrell, Lowrey and Shea to represent the company upon the subject of such negotiations and those matters incidental to it. It may also be inferred, from what then occurred, that the plaintiff was justified in supposing that he would become the contractor for the work, and that what he did was in contemplation that such relation would be consummated. It may, from what appears, be assumed that plans and drawings of the proposed road were essential preparatory to the commencement of the work, and perhaps for an estimate of it. In the unexecuted contract, drawn in July, Mr. Serrell was referred to as the engineer who should prepare them, and in the contract submitted to the board of directors in September, 1882, reference was also made to the plans, profiles, specifications, etc., of the company's engineer and his assistants. In view of their preparation the plaintiff advanced money to the engineer, Serrell, to enable him to make the drawings, etc., and he finally being unable to satisfactorily prepare them, a Philadelphia party, competent to do it, was employed and paid by the plaintiff for that purpose. They were made by that party, and having been submitted to the inspection of the president of the company, were by him approved. The expenses incurred for the preparation of the plans, drawings, etc., including the payment made to Serrell for that purpose, constituted a considerable portion of the plaintiff's claim allowed by the referee.

This disbursement, the evidence on the part of the plaintiff tends to prove, was made with the knowledge and consent of the engineer and Lowrey, and at the request of the latter, assuming to represent the defendant. And the same may be

said of the services and other expenses of the plaintiff. While the authority of Lowrey, as counsel, did not enable him to incur the liability of the defendant to the plaintiff for such disbursements, services and expenses, there was something in the action of the board in September, in view of what he had done, which tended to recognize him as the representative of the company for some purposes connected with the negotiation with the plaintiff; and this was a fact which may properly have been considered by the referee in relation to subsequent events. It was through Lowrey that the arrangement, so far as it had progressed, was made with plaintiff, which produced the proposed contract submitted to the board of directors. He drew those contracts; the resolutions through him were submitted to the plaintiff, and he thereafter assumed to continue to represent the company so far as related to the means employed preparatory to contracting the work. The plaintiff seems to have been a practical man in the business of constructing railroads. Such experience was essential to the preparation for the work. It may be observed that the only immediate object of the company was the construction of its road. This was the first thing to be done, and whatever was essentially preparatory to that result was within its apparent design and purpose. The president did not, nor did the directors, personally appear to give it much attention. The secretary, so far as appears, did nothing beyond his duties as such. The active men were the engineer and Lowrey, of the attorneys and counsel for the company. Judge SHEA, it seems, represented largely the stockholders. He was also somewhat active, and of him the president of the defendant testified: "Judge SHEA was acting as counsel for the company; I understand he was acting in that capacity; he had general charge of the negotiations and arrangements to be made during the whole term of my presidency, I should say." The inference was warranted that those three parties, the engineer, the counsel and the judge, were acting in harmony and with a view to doing what was requisite to produce the construction of the road. This was apparently the object, and it was with the view to that end that the

plaintiff's services and disbursements for which recovery was directed by the referee were rendered and made by him. Although it may not be easy of satisfactory demonstration in a brief space, we think the circumstances already referred to, and others appearing in the record, permitted the conclusion that the plaintiff had the right to assume that the persons before mentioned, with whom he negotiated and dealt in the matter, legitimately represented the defendant in that respect, and that they were acting within the authority apparently recognized by the company. The difficulty in reaching this conclusion would have been materially increased if the action and resolutions of the board of directors of September, 1882, had not been put in evidence; and the fact that the money advanced by the plaintiff was for the benefit of the defendant, and in the line of business essential to the leading purpose of its organization, is a circumstance properly for consideration in its relation to other facts bearing upon the situation. (*Peterson* v. *Mayor, etc.,* 17 N. Y. 449; *Wild* v. *N. Y. & A. S. Mining Co.,* 59 id. 644; *Scott* v. *Middletown, etc., R. R. Co.,* 86 id. 200.) This view is deducible only from the evidence the most favorable to the plaintiff. And however difficult it may appear to have been upon the evidence, as a whole, to satisfactorily reach the conclusion of the referee, it is sufficient, for the purposes of this review, that there was some evidence to support every fact essential to the result. It was also an important fact that the plaintiff was ready and able to take and perform the contemplated contract, and that it was denied him without causes chargeable to any fault on his part. The fact was so found upon conflicting evidence in that respect.

It is contended that there was no support for the allowance to the plaintiff for his services and expenses during the period mentioned. The referee found on that subject that, in pursuance of such employment before mentioned, the plaintiff, at the request of the defendant, devoted his entire time and services, from June 7, 1882, to March 15, 1883, to the interests of the defendant; that his services were reasonably worth at the rate of $5,000 per annum; and that he necessarily paid

out and expended in traveling and hotel expenses, for the services of his employes and other necessary disbursements, $3,260.65, and that the services were rendered and the moneys paid out and expended upon the agreement (before mentioned in the referee's report) and in reliance by the plaintiff thereon. The facts that the plaintiff so devoted his entire time and services during such period, that they were of such value, and that he incurred such expenses and made such disbursements in the matter mentioned, were supported by the evidence, as was also the fact that he did it in reliance upon the understanding referred to. And those findings of fact are entitled to the same consideration as those before mentioned. In that view, when the plaintiff was denied the contract upon the faith of which he had proceeded, the referee, upon the facts as found by him, was justified in awarding to the plaintiff such compensation for services and such reimbursement for moneys so expended in that behalf for the benefit of the defendant. These views lead to the conclusion that none of the findings of fact, by the referee, were entirely without the support of evidence. And, therefore, neither of the exceptions to them is well taken.

There were several exceptions taken by the defendant's counsel to the reception of evidence, the competency of which was dependent upon further evidence. And upon the assurance of the plaintiff's counsel that it would be supplied, the evidence was received conditionally. The question was one of order of proof, and if there was a failure of further proof to give to any of it connection requisite to its legitimate effect as evidence, it properly may have been made the subject of a motion to strike out. No such motion appears to have been made, and it cannot be assumed on this review that evidence (if there was any such) so received, not rendered competent, was finally considered by the referee upon the merits. (*First Unitarian Society* v. *Faulkner*, 91 U. S. 415; *Place* v. *Minster*, 65 N. Y. 89; *Bayliss* v. *Cockcroft*, 81 id. 363.) The same may be said of the evidence of Mr. Francis

at the time it was received. He represented the Philadelphia party who prepared the plans, etc., of the road. The interview between him and the plaintiff had relation to an estimate of the work desired of his principal, and to drawings required and made of the proposed road. There was a small portion of his evidence not, apparently, within the purpose of the ruling upon the general objection, and which, very likely, may have been excluded upon a specific objection to it. But as it was not so taken nor any motion made to strike out, there was no exception presenting error in that particular respect.

The plaintiff was permitted to put in evidence his book of memoranda made by him, to which the defendant took a general objection and exception. This did not appear to be competent evidence. But as it was not set out in the record we are not advised of its contents or whether they were of such character that the defendant could have been prejudiced by the evidence. There is a further reason why the general objection is not available for the predication of error upon the ruling. The plaintiff's memoranda may have been rendered competent by his evidence verifying the entries as original and correct, and showing that he was unable to recollect the items independently of the memoranda. (*Guy* v. *Mead*, 22 N. Y. 462; *Howard* v. *McDonough*, 77 id. 592; *Peck* v. *Valentine*, 94 id. 569.) And, as it may be that the specific objection could have been obviated, the general objection was not well taken. (*Fountain* v. *Pettee*, 38 N. Y. 184; *Bergmann* v. *Jones*, 94 id. 51.)

After a careful examination of the record, the conclusion is that there was no error to the prejudice of the defendant in any of the rulings of the referee to which exception was taken.

The judgment should be affirmed.

All concur.

Judgment affirmed.