pected to occur if the elevator had been hoisted. There was no reason on their part, so far as the evidence shows, to suppose that it would not be hoisted whenever it was necessary to do so, and the plainest dictates of prudence should have suggested to them that it was not safe to put these planks through the bight of the rope, and thus subject themselves to the danger of being upset in case the elevator was hoisted. There is nothing in any of the exceptions to the ruling of the court upon evidence which could harm the plaintiff in view of the undisputed facts. Upon the evidence, as it is disclosed by the record, it is very clear that not only was there no negligence on the part of the defendant, but that the persons building the scaffold, who were the co-employés of plaintiff's intestate, were guilty of gross carelessness.

For these reasons, the order of the court dismissing the complaint was correct, and the judgment should be affirmed, with costs. All concur.

<hr />

### CARNEY v. NEW YORK LIFE INS. CO.

(Supreme Court, Appellate Division, First Department.    June 11, 1897.)

CORPORATIONS—POWERS OF OFFICERS—CONTRACTS OF EMPLOYMENT.

An officer authorized by the by-laws to appoint, remove, and fix the compensation of employés cannot make a contract of employment for the life of the employé.

Appeal from trial term, New York county.

Action by Sidney H. Carney, Sr., against the New York Life Insurance Company for breach of an alleged contract of employment. The complaint was dismissed, and plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

James D. Fessenden, for appellant.
Wm. B. Hornblower, for respondent.

INGRAHAM, J. Upon the trial of this action, after the plaintiff had opened the case to the jury, the defendant moved to dismiss the complaint upon the complaint itself and upon the opening. That motion the court granted, the ground of the decision as stated by the court being "that the action, as appears from the pleadings and the opening, rests upon an agreement, set out in the complaint, which, under the ruling in the Beers Case [20 N. Y. Supp. 788], appears to be void." The complaint alleges the incorporation of the defendant; the adoption by it of certain by-laws, by which the power was conferred upon the president and actuary "to appoint, remove, and fix the compensation of each and every person, except agents, employed by the company"; that in the month of December, 1869, the plaintiff entered into an oral contract and agreement with the then president and actuary of the company by which the plaintiff was employed by the defendant, "and it was at the same time agreed by and between the plaintiff and the said Franklin and Beers [the president and actuary], acting for the defendant, as aforesaid, that the

employment of the plaintiff by the defendant should continue during the life of the plaintiff"; and that subsequently, in 1895, the plaintiff was discharged by the defendant. It is upon such breach of the contract of employment that the plaintiff in this action seeks to recover.

In the opening, counsel stated the agreement as follows:

"It was agreed between them [the plaintiff and Franklin and Beers, representing the defendant], they acting on behalf of the New York Life Insurance Company, and himself [the plaintiff], that he should enter into the service of the defendant company for the term of his life, and it was then and there agreed that his salary at the beginning should be at the rate of $5,500 per year for the first year, and $6,000 the next and the third, and thereafter increased from time to time, if he should live, as the business and the success of the company warranted."

There is no statement, either in the complaint or in the opening, that such a contract was ever submitted to the trustees of the company, or that the trustees in any way ratified such contract or employment. The question presented, therefore, is as to whether an executive officer of a company, having general authority by the by-laws to appoint, remove, and fix the compensation of employés, has the power to make a contract of employment for the life of the person employed, thus limiting by his own act not only his authority, expressly granted to him by the by-laws, but also the power of the corporation itself to discharge its employés; in other words, whether the making of such an unusual contract to last for an indefinite period, imposing upon the corporation obligations which cannot be measured at the time the contract is made, is within the authority granted by the by-laws which authorize an executive officer to appoint, remove, and fix the compensation of an employé. It seems to me clear that it is not. The meaning that attaches to the word "appoint," when used in connection with an office, is to designate or nominate a person to fill the position to appoint to which the power is given. Of itself the mere power of appointment does not include a power to fix the term for which the person is appointed. The general use of the word is applied simply to the authority to designate a person to fill a position, and a power to appoint could not include either a power to fix the term or a power to fix the compensation to be paid to the person so appointed. This was recognized by the by-law in question, which gave to these two executive officers of the company the power to appoint and remove the employés of the company, and at the same time the power to fix the compensation to be paid to them. If it had been intended to give to these two executive officers the power to make a contract by which an appointment should be continued for a definite term, it seems to me that such power would have been expressly conferred upon such officers; and it would not have been allowed to rest upon implication,—an implication which would have extended the meaning of the word "appoint" much beyond the one usually given to it, or in the ordinary conception of the idea that is conveyed when the word is used. In construing the authority granted to an officer or agent by a corporation it is always competent to consider the general object for which the corporation was created, the nature of the busi-

ness carried on by it, the character of the officer upon whom the power is conferred, and for what object the authority was conferred. Here was a corporation organized for the purpose of insuring lives and granting annuities, doing an enormous business, employing a large number of clerks and other employés, and it is quite evident that the successful conduct of the business depended upon the energy and ability with which the employés of the company transacted its business. It would be manifestly impossible for the trustees of such a corporation to have a knowledge of the details of the business and of the ability of the various employés by whom it was conducted, so as to employ and discharge such employés, or to determine just what compensation should be paid to each of them. Such knowledge must necessarily be confined to the chief executive officers of the company, who are daily brought in contact with the employés, and who understand the manner in which they do their work, so as to determine whom it is advisable to promote or retain, and whom to dismiss. To accomplish this purpose, these two officers were given authority to appoint, remove, and fix the compensation of the employés of the company. It was not thought safe to leave it to one, but the concurrence of these two officers was required. The object thus sought to be attained would be frustrated if perpetual contracts of the kind here attempted to be enforced were made by the officers of the company thus vested with this authority. These officers might, without consulting the board of trustees, fill every office with a person holding a life position, by which not only the power of the persons then holding the office of president and actuary, but of all persons subsequently holding such office, to remove an employé would be taken away during the lifetime of the incumbent; and thus the officers themselves, acting under a power which gave the present incumbent of the office authority to remove, would so restrict that power as to take it away from their successors, and to practically nullify it for an indefinite period. The implication of such a power, therefore, would not only be an implication not authorized by the language used, but would expressly contradict and be repugnant to an express provision of the by-law in question. The facts of this case show how dangerous it would be to invest any executive officer with the power to make such a contract as is here claimed. Immediately upon the death of such officer every employé of the company might claim that he had had a verbal agreement with such officer that his employment should continue during his life. The officer with whom it was said that contract was made would be dead; and every employé who would be willing to swear that such a contract was made would, under such circumstances, have a position for life, which it would be beyond the power of the corporation or of its officers to terminate.

The plaintiff in this action asks for $168 000 damages for a breach of this contract, a contract never reduced to writing, of which no record was kept, and of which no report was made to those responsible for the management of the affairs of the corporation, or to the policy holders to whom the property of the corporation belonged,—a contract depending upon a verbal understanding between these offi-

45 N.Y.S.—70

cers, who are now dead, and the plaintiff, who is the sole survivor of those who took part in the conversation which it is claimed constituted such a contract. That any board of directors, or the persons responsible for the management of the corporation, could give such a power to an executive officer is hardly to be considered possible, and certainly would not be implied except where the language used clearly showed that such was the intention of the corporation. As it is not suggested, either in the complaint or the opening, that any knowledge of this contract was communicated to the board of trustees or to the policy holders, or that they have done any act which could be said to be a ratification of such contract with knowledge of its existence, there is nothing upon which to base a finding of ratification. See Camacho v. Engraving Co., 2 App. Div. 372, 37 N. Y. Supp. 725.

The learned counsel for the appellant criticises the decision of the general term of the supreme court in the case of Beers v. Insurance Co., 66 Hun, 75, 20 N. Y. Supp. 788, but it is not necessary now to discuss the question whether or not in such a case as this the board of trustees or directors of a corporation would have power to make a contract with an employé for any definite time. Certainly these executive officers of the company had no authority to make a contract by which one of the employés of the company should remain in its employ for his life, and there was no allegation in the complaint, and no fact stated in the opening which would justify a finding of ratification.

The action of the court below was, therefore, clearly right, and the judgment is affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON and O'BRIEN, JJ., concur. WILLIAMS, J., concurs in result.