## CALDWELL v. MUTUAL RESERVE FUND LIFE ASS'N.

(Supreme Court, Appellate Division, First Department.   July 17, 1900.)

**1. CORPORATION—EMPLOYMENT OF AGENT—EXECUTIVE COMMITTEE—DELEGA-
   TION OF AUTHORITY.**

A charter of a life insurance company required its business to be
conducted by a board of twelve directors, and all corporate powers were
vested in such board, which was required to choose three of its number
to act as an executive committee, which was required to determine all
salaries, and make contracts with general agents, etc.  Plaintiff was
employed as defendant's general manager in its Liverpool department,
under a contract made by one of the executive committee, acting in con-
junction with the defendant's London manager, in pursuance of a gen-
eral authority from the other two members of the executive committee.
No record of any proceedings by the committee delegating such author-
ity was shown.  *Held*, that the contract was void, since, even though the
committee had power to bind defendant, it had no power to delegate
the same to one member, in a matter involving the exercise of its dis-
cretion.

**2. SAME—VOID CONTRACT—MODIFICATION—PART PERFORMANCE—RATIFICATION.**

In the absence of evidence that the board of directors of a corporation
ever knew that a void contract for the employment of an agent had been
made, or, if made, that it had ever been modified by its president, as
alleged, or that the agent had ever received compensation under it, no
ratification was shown;  the president not being authorized, by virtue
of his office, either to make or modify the contract.

**3. SAME—INSURANCE COMPANY—AGENTS—CONTRACT FOR SERVICES—COMPENSA-
   TION—REASONABLENESS—COMPENSATION BEYOND SERVICE—ULTRA VIRES.**

Where an assessment insurance company agreed to pay plaintiff all
the admission fees of persons insuring during the 10 years thereafter.
and 50 per cent. of the dues for expenses actually paid during the first
year of insurance, and the same percentage of dues for expenses actually
paid after such year, on all policies issued in that department during
the 10 years, whether plaintiff continued as manager, or procured the
appointment of a competent person to fill his place, such contract was
unreasonable and ultra vires, since it bestowed a large percentage of
the receipts on the employés of the company, extending over a term dur-
ing which service might not be rendered, so as to exhaust the only
source to which the company could look to pay insurance to policy hold-
ers, and hence constituted a fraud on them.

Appeal from judgment on report of referee.

Action by Dimont M. Caldwell against the Mutual Reserve Fund
Life Association.  Judgment for plaintiff, and defendant appeals.
Reversed.

See 63 N. Y. Supp. 841.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN,
PATTERSON, and INGRAHAM, JJ.

Frank R. Lawrence, for appellant.
Herman Aaron, for respondent.

McLAUGHLIN, J.   The action was to recover a sum alleged to
be due under a contract.   The complaint alleged, in substance, that
on or about the 5th day of July, 1887, the defendant, a domestic
life insurance corporation conducting business on the assessment
plan, entered into a contract with the plaintiff by which it agreed
that if he would go to Liverpool, England, and personally take charge,

as manager, of its department located at that place, for a period of not less than six months from such date, and before leaving the same, in person, secure one or more competent persons to take charge of such department, it would pay him upon all of the business done in or pertaining to that department at any time during the period of ten years from July 5, 1887, all the admission fees paid by policy holders or members of the defendant insuring during such time, and in addition thereto 50 per cent. of the dues for expenses actually paid during the first year of insurance under all policies of insurance issued through such department by the defendant during said ten years, as well as 50 per cent. of all dues for expenses actually paid after the first year, so long as such dues should be paid to the defendant; that the contract was, at the request of the defendant, modified in 1888, and also in 1889, by which the plaintiff's compensation was increased, he paying certain expenses; that the plaintiff performed all the conditions of the contract on his part to be performed, including those contained in the modifications, and remained personally in charge of that department until May, 1890, when, at the request of the defendant, he left the same in charge of a competent person entirely satisfactory to the defendant; that under the terms of the contract the plaintiff had become entitled to receive between May, 1890, and the commencement of this action, the sum of $50,000, for which judgment was demanded. The answer denied the making of the contract set out in the complaint, and alleged that the compensation to which the plaintiff was entitled for services rendered by him to the defendant in the Liverpool department was certain fees and commissions upon premiums received during the time that he personally rendered services to the defendant in such department, and no longer, which sum had been fully paid to him prior to the commencement of the action. It also alleged that the defendant in May, 1890, ceased to render services in such department, and accepted another position from the defendant, for which it paid him a fixed salary.

The referee, to whom the action was referred to hear and determine, found that:

"About July 5, 1887, a contract was duly made, entered into, and executed by and between plaintiff and defendant, in writing, as of July 5, 1887, wherein and whereby defendant employed the plaintiff to become manager of and to develop the business of a department of said defendant, known as the 'Liverpool Department' (said department to embrace the territory of Lancashire, Cheshire, North Wales, and the Isle of Man, in England), and wherein and whereby it was promised and agreed by and between the plaintiff and defendant that the plaintiff should personally attend to the business of said department for a period of not less than six months from July 5, 1887, in the city of Liverpool, England, and that said plaintiff should, before leaving the same, in person, secure one or more competent persons to take charge of the business of said department; and in and by said contract it was provided that said defendant should pay to the plaintiff, upon all business done in or pertaining to said department, at any time during the period of ten years from July 5, 1887, all of the admission fees paid by policy holders or members of defendant insuring during such period of ten years, and also fifty per cent. of the dues for expenses actually paid during the first year of insurance under all policies of insurance issued in said department, by the defendant during said ten years, and also fifty per cent. of all the dues for expenses actually paid at any or all

times after said first year upon such policies, so long as the same should be paid to the defendant, the defendant agreeing to defray the expenses of the business of said department. And plaintiff duly accepted such employment, and duly remained in personal charge of said department for upwards of six months, and until in or about the month of May, 1890, when he duly left said department in charge of one A. R. Harvey, who was a competent person to take charge of the same."

The referee also found that the contract was modified in some respects in 1888 and in 1889, by which the plaintiff's compensation was increased, he agreeing to bear certain expenses connected with that department, and that the amount which the plaintiff was entitled to receive from the defendant, according to the terms of this contract as modified, intermediate the date of his leaving the department in charge of Harvey and the commencement of this action, together with interest thereon to the date of his report, was $50,982.81. Judgment was entered to this effect, from which the defendant has appealed.

Much of the evidence introduced upon the trial, as set out in the voluminous record before us, was directed to the question as to how much was due the plaintiff under the contract as found by the referee. The conclusion at which we have arrived renders it unnecessary for us to consider whether this evidence was sufficient to sustain the conclusions of the referee, because, assuming that it was, we do not think that the plaintiff established a contract with the defendant which entitled him to recover. In other words, we think the plaintiff failed to establish (giving to the evidence introduced by him the most favorable consideration possible) a legal contract with the defendant, the terms of which it was obligated to carry out, beyond the time when he ceased to render personal services under it. The statute under which the defendant was organized and transacted business during the time referred to required that its business and affairs should be conducted by a board of directors, to consist of 12 members; and the constitution and by-laws of the defendant expressly provided that its corporate powers were vested in its board of directors. Article 2, § 4. Article 3, § 2, of its constitution and by-laws provided that:

"The directors shall elect three of their number, who shall constitute an executive committee, who shall appoint medical examiners as they deem necessary, audit death claims, shall determine all salaries and expenses, and shall have the power to make contracts with general agents and others for the furtherance of the business of the association, and for the benefit of its members."

In July, 1887, the executive committee consisted of Harper, the president of the company; Bloss, the vice president; and one Taylor. What the plaintiff claims is, in substance, that he made a contract with Bloss, or with Bloss acting in conjunction with one Hayward, who was the general manager at London, which contract was authorized by the other two members of the executive committee. But there is no satisfactory proof that the executive committee, acting as such, ever conferred authority upon Bloss or Hayward, either acting separately or in conjunction with each other. No resolution of the executive committee or record of its proceedings was shown,

from which such fact could be found or even inferred; and, if such fact had been shown, it would not have availed the plaintiff, for the reason that the executive committee did not have the power to thus bind the defendant. But, if it be assumed that the executive committee did have such power, it certainly did not have the power to delegate that authority, involving in its nature the exercise of judgment of the very highest character, to one of its members. It could only act as a whole in whatever was done, in which each member either participated or had an opportunity to participate. And it cannot be presumed, in the absence of some act of the corporation specially conferring the authority upon Hayward, that, simply because he was the general manager at London, he had the power to bind the defendant to contracts of an extraordinary nature, and of a character that would involve the corporation in enormous obligations, extending over long periods of time. Camacho v. Engraving Co., 2 App. Div. 369, 37 N. Y. Supp. 725. But it is said that the defendant subsequently ratified the contract which Bloss made with the plaintiff; and in this connection the act of the president in modifying the contract in 1888, as well as in 1889, is cited, and also the fact that the plaintiff while he remained personally in charge of the Liverpool department received compensation in accordance with the terms of the contract. There is, however, no force in this contention, inasmuch as no evidence was introduced upon the trial which established that the board of directors of the defendant ever knew that such a contract had been made, or that, if made, it had been modified in the manner indicated, or that the plaintiff had been paid for services the amount which he received while personally in charge. Unless the board of directors knew of the existence of the contract, it certainly did not ratify what was done under it. There can be no such thing as a ratification unless the one ratifying acts with full knowledge of what has been done. Trustees, etc., v. Bowman, 136 N. Y. 521, 32 N. E. 987; Craighead v. Peterson, 72 N. Y. 280. And Harper, in the absence of express authority from the corporation, certainly could not, by virtue of his position as president, bind the corporation either by making or modifying a contract of this character.

But we do not think that the directors of the corporation had the power to make the contract which the plaintiff alleges and which the referee has found that it did make. Carney v. Insurance Co., 19 App. Div. 160, 45 N. Y. Supp. 1103, affirmed in 162 N. Y. 453, 57 N. E. 78; Beers v. Insurance Co., 66 Hun, 76, 20 N. Y. Supp. 788; Camacho v. Engraving Co., 2 App. Div. 369, 37 N. Y. Supp. 725. In determining whether the directors of a corporation have the power to make a contract, it is proper to consider the general object for which the corporation was created, as well as the general character and nature of its business. Carney v. Insurance Co., 162 N. Y. 453, 57 N. E. 78. This corporation was organized for the purpose of insuring the lives of individuals. Its ability to perform the contracts which it made with such individuals depended entirely upon the amount of premiums which it received from them by way of assessments. This was the only source of its income, and furnished the only

means which it had to faithfully, honestly, and in good ·faith .per-
form that which it agreed to do.   Having this object in mind, we do
not think its board of directors (much less, its executive committee)
could enter into a contract with a person by which it agreed to pay
him a compensation extending beyond the time when he rendered
services, the extent of which might go beyond his life, and the amount
of which could by no possibility be known.   If the corporation .had
power to thus deal with the plaintiff,—if it could, for six months'
services rendered by him, agree to pay him a certain amount of the
premiums received, not for 10 ·years, but so long as persons insured
within that time should continue to pay premiums,—then it could
make a contract with other of its employés by which the entire in-
come derived from policy holders would be exhausted, and.thereby
completely disable itself from performing its obligations.   Manifestly,
this could not be done.   It would not only defeat the object of the
statute which committed the management of the business and affairs
of the corporation to· a board of directors, but would be a fraud upon
policy holders, which the law does not and will not sanction.   Such
contracts were condemned in the cases above cited, and in principle
they cannot be distinguished from the one sought to be enforced in
this action.   The contract was an unreasonable one, and beyond the
power of the officers or directors of the corporation to make.   The
conclusion thus reached renders it unnecessary to pass upon the other
questions raised by the appellant.

It follows that the judgment must be reversed, and a new trial
ordered before another referee, with costs to the appellant to abide
the event.   All concur.