JOHN H. USHER, Respondent, *v.* THE NEW YORK CENTRAL AND
HUDSON RIVER RAILROAD COMPANY, Appellant.

*Railroad division superintendent — right of, to make a contract with an injured
employee to employ him for life —* ultra vires *contracts, when enforced.*

A contract made between a division superintendent of a railroad and a person
who, while a brakeman in the employ of the railroad company, had sustained
injuries which resulted in the amputation of his leg, by which the brakeman,
who was contemplating the institution of a suit against the railroad company
to recover damages for the injuries sustained by him, executed a general
release to the railroad company in consideration of a check for one-half of his
wages for the period that he had been disabled and a promise that he would
be employed by the railroad company as long as he should live as a flagman at
a certain crossing at one-half the wages which he had previously received, is
not unreasonable in that it infringes upon the powers of succeeding corporate
officers.

Assuming that such a contract was beyond the scope of the division superintend-
ent's authority and was *ultra vires* as to the railroad company, the latter can-
not assert that fact in defense to an action brought against it to recover dam-
ages for the breach of the contract, where it appears that the railroad company
has retained the release executed by the plaintiff, and that the claim released
thereby is now barred by the Statute of Limitations.

WOODWARD and JENKS, JJ., dissented.

A corporation, when sued, cannot set up *ultra vires* as a defense to an action for
a breach of contract or even for specific performance when it has had the full
benefit of the contract and the other party has duly performed it; nor will
such a plea avail, whether for or against a corporation, when it will not
advance the ends of justice.

APPEAL by the defendant, The New York Central and Hudson
River Railroad Company, from a judgment of the Supreme Court
in favor of the plaintiff, entered in the office of the clerk of the
county of Rockland on the 20th day of May, 1901, upon the verdict
of a jury, and also from an order entered in said clerk's office on
the 14th day of June, 1901, denying the defendant's motion for a
new trial made upon the minutes.

*Thomas Emery, Herbert E. Kinney* and *Robert A. Kutschbock,*
for the appellant.

*A. S. Tompkins,* for the respondent.

HIRSCHBERG, J. :

The action is brought to recover damages for the breach of a contract by which the plaintiff claims that the defendant employed him to work for life at a monthly compensation of thirty-five dollars, or about half pay. There was evidence from which the jury was justified in concluding that such a contract was entered into on June 6, 1895, between the plaintiff and William G. Watson, now deceased, then superintendent of the Hudson River division of one of the defendant's railroads. The plaintiff had been injured the previous March while in the defendant's employ as brakeman, the injury resulting in the amputation of his leg, and he claimed the right to damages in consequence of it; and the evidence tends to establish that in the interview between him and Watson on June sixth he received a check for $128, being one-half wages for the period that he was laid up, and also received from Watson the promise of the life employment as flagman at Conger's crossing. The plaintiff, in consideration of the payment and as the proof tends to show of the promise of permanent employment, then executed a general release to the defendant, whereupon he was given the promised employment and retained in it until November, 1900, when he was discharged without cause.

The main contention on the part of the appellant is that the contract, if made, was not binding upon the company, for the reason that the division superintendent had no power to make it in the absence of express authority and that the contract was in itself unreasonable. In *Carney* v. *N. Y. Life Ins. Co.* (162 N. Y. 453) it was held that a contract by which a person was employed for life, made by the executive officers of a life insurance company assuming to act under a by-law, previously adopted by the board of trustees, empowering them " to appoint, remove and fix the compensation of each and every person except agents employed by the company," was unreasonable, and not contemplated thereby. The court held that because the term of office of the trustees was limited by statute, it must be assumed that they would not adopt a by-law authorizing the imposition of unreasonable contracts upon their successors in office. The contract was executory on both sides, and the decision rested upon the construction of the by-law and a judicial determination of the power designed to be conferred by it. By a

parity of reasoning it may be conceded in this case that the general employment by the executive officers of the defendant of their employees for life would be unreasonable and beyond the power conferred upon them or upon the defendant by the statute from which it derives its corporate life and functions. But the case presented is not one of a simple and naked contract of employment, but is the case of the immediate and final settlement and adjustment of a claim for compensation for serious injuries alleged to have been occasioned by the defendant's negligence, and the reasoning of the decision cited has no necessary application. In such a case where an employee has been rendered nearly helpless by the company's fault and without any fault of his own, it could hardly be said to be unreasonable, in consideration of a release of his claim for damages, for the company to agree to put him to such work as he was still competent to perform in his crippled condition, to pay him for it one-half of what he was previously able to earn and to keep him at it for life, that is, during good behavior, obedience and competency. It is within general knowledge that such contracts under such circumstances are by no means unusual, and to whatever other objection they may be obnoxious they would seem to be free from the taint of unreason as infringing upon the powers of succeeding corporate officers.

But even if the contract was beyond the scope of the division superintendent's authority, and *ultra vires* as to the defendant, the defendant is not in position to assert the fact in defense of the plaintiff's claim. That Watson had authority to settle the plaintiff's claim for damages can scarcely be disputed inasmuch as the defendant has taken a release of the claim from the plaintiff through his agency, has kept it until the plaintiff's claim is barred by the Statute of Limitations, has asserted it as a defense in the answer, and has produced it upon the trial. The settlement of the plaintiff's claim for damages is not an act which is *ultra vires*, and assuming that the agreement of hiring is such, yet the plaintiff has fully performed his part of the contract and his cause of action cannot be restored to him. The transaction between Watson and the plaintiff was in effect but a single agreement by which the latter released his claim and the former agreed to hire him for life in consideration of such release. To permit the defense now under con-

sideration, would relieve the defendant from all liability on a contract which the plaintiff fully performed when he relinquished his claim. A corporation, when sued, cannot set up *ultra vires* as a defense to an action for breach of contract, or even for specific performance, when it has had the full benefit of the contract and the other party has duly performed it; nor will such a plea avail, whether interposed for or against a corporation, when it will not advance justice but will accomplish a legal wrong. (*Camden & Atlantic R. R. Co.* v. *May's Landing, etc., R. R. Co.*, 48 N. J. L. 530; *Heims Brewing Co.* v. *Flannery*, 137 Ill. 309; *People's Gaslight & Coke Co.* v. *Chicago Gaslight & Coke Co.*, 20 Ill. App. 473; *Town Co.* v. *Fletcher*, 46 Kans. 524; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62, 70; *Rider Life Raft Co.* v. *Roach*, 97 id. 378; *Holmes & Griggs Mfg. Co.* v. *H. & W. M. Co.*, 127 id. 252; *Linkauf* v. *Lombard*, 137 id. 417.)

The judgment and order should be affirmed.

All concurred, except WOODWARD, J., who read for reversal, with whom JENKS, J., concurred.

WOODWARD, J. (dissenting):

The judgment in this case should be reversed, because the contract set forth in the complaint, and which is the basis of the recovery, was void as against public policy, and because there does not appear to have been any consideration for the alleged contract. The action was brought to recover $15,000 damages for a breach of a contract alleged to have been made by the defendant with the plaintiff for his employment during his natural life, at not less than $30 per month. The plaintiff, while an employee of the defendant, and on the 14th day of March, 1895, was engaged as a brakeman upon one of the freight trains of the defendant, running on the West Shore railroad from Weehawken to Ravena, and while so engaged met with an accident by which his left leg was run over, necessitating amputation. There is no evidence in the case that the accident happened under circumstances which would make the defendant liable; no evidence of how the accident happened, of the causes which produced it, or any fact from which a jury might properly infer that the plaintiff had a cause of action against the defendant which would afford any consideration whatever for the

alleged contract. All we know of the case is that the plaintiff was injured in an accident while employed by the defendant, and that he lost a leg. It appears that after the plaintiff had so far recovered from his injuries that he was able to be about, he went to the office of William G. Watson, division superintendent of the West Shore railroad, and was there given a check for $128, which, it is claimed, was one-half pay for the time that the plaintiff had been out of employment. Upon receiving this check the plaintiff signed a voucher or receipt in full of all demands growing out of the accident, as well as a general release, this latter being signed in the presence of a subscribing witness; but it was pleaded, and some evidence was produced upon the trial to support the averment, that the plaintiff signed these papers under a misapprehension of their purport. The evidence is by no means conclusive upon this point, but in the view I take of this case it is not important to consider this question. The evidence of the plaintiff is that after he had signed these papers releasing the defendant from all liability, if there ever was such a liability, which nowhere appears, he said to Mr. Watson, who is not shown to have had any other authority to bind the company than such as pertains to the duties of a division superintendent of a railroad, "Well, I have been to see a lawyer about this case and he has advised me to sue, and I am going to bring suit unless you give me a satisfactory settlement."

It is essential to a valid contract that there should be a valid consideration and that the minds of the parties should meet, and it is hardly to be believed that Mr. Watson, with the receipts and vouchers of the plaintiff in his possession, contemplated that there was any consideration for the promise which he is alleged to have made to the plaintiff on this occasion. The evidence is that after the remark quoted, Mr. Watson hesitated and then said: "What can you do?" Plaintiff replied, "I can't do much of anything the way I am." Mr. Watson said, "I will give you a life position on the crossing as long as you live," and it subsequently appeared that the price named was thirty-five dollars per month. It does not appear that the plaintiff accepted this proposition at the time or that there was any further conversation in reference to the matter, but the plaintiff subsequently went to work upon a street crossing as a gateman and remained there for about five years, when he was discharged

from employment by the successor of Mr. Watson, who had, in the meantime, died. It is upon this flimsy basis that the plaintiff attempts to establish a contract of employment for life against the defendant.

In the case of *Camacho* v. *Hamilton Bank Note & Eng. Co.* (2 App. Div. 369), where one Gray signed a contract of employment for three years, signing himself as " vice-president and general manager," the letters by which the contract was evidenced were ruled out on the ground that no authority was shown in Gray to make the contract sued upon, and this action of the trial court was supported on appeal. The court say : " It is conceded that there is nothing appearing in the case to show that Mr. Gray had, by virtue of any powers conferred upon him by the by-laws of the corporation, or by the express delegation of the directors, the ability to make a contract binding upon the corporation of the character of that in suit. But it is claimed by the plaintiff that, in making his arrangement with Gray, he was entitled to rely upon the apparent authority which he exercised as general manager and upon the assumption that, as general manager, it was within his province to make this contract of employment. In the absence of proof of what exact authority belongs to a person descriptively styled a general manager, there is no rule by which a court can be guided in determining what the powers of such an official really are, except such as the evidence in a particular case may furnish of what the person has done in the general course of the business of the corporation. That the words 'general manager' would import that the person bearing that title is a general executive officer for all the ordinary business of the corporation is all that may properly be inferred, and this would justify, in connection with proof of acts done, a conclusion that all ordinary contracts made by such an official are authorized by the corporation. But no presumption of law can be indulged in that, because a person acts as such a manager, he has the power to bind his principal to contracts of an extraordinary nature and of such a character as would involve the corporation in enormous obligations and for long periods of time. If a general manager, simply by virtue of his being charged with the ordinary conduct of the business, would have the right to bind his principal to a contract for service for three years, involving the obli-

gation to pay thousands of dollars of salary to an employee, why may not that power extend indefinitely so that he may make contracts for all employees for indefinite periods and thus assume to himself a power which it cannot be supposed was ever intended to be lodged in him ? "

If the " vice-president and general manager " may not make a contract of employment for three years, and the authority of this case is recognized so late as *Peck* v. *Dexter S. P. & P. Co.* (164 N. Y. 127, 129), it follows that a mere division superintendent, who is not shown to have had any authority to deal with these cases (for it does not appear that he had anything to do with the matter except to deliver the check and secure the signing of the vouchers and receipts which had been forwarded from the general offices in the regular course of business), cannot make a binding contract of employment for life with a person who is not shown to have parted with any valuable consideration for such alleged contract.

The court in the *Camacho Case* (*supra*) continue : " The cases referred to by the counsel for the appellant concerning the holding out of an agent to a party dealing with him in good faith require no consideration. The doctrine they announce is not to be disputed. It is a question of fact though whether Gray was acting within the scope of an apparent authority when he undertook to bind the defendant by this contract."

Upon the trial of the action now before us the learned court first charged the jury that they might determine whether Mr. Watson had authority to make a contract for life with the plaintiff, but upon an exception being taken to this portion of the charge, the court said : " I think I will withdraw that. I will tell the jury that there is no evidence to warrant them in finding that the division superintendent had authority covering such a case, and leave it to you to say simply whether, under all the circumstances, the defendants are estopped from saying that he did not have authority." The defendant duly excepted to this modification of the charge, and we are brought to consider the question whether the defendant could be estopped by this alleged contract of its division superintendent and the subsequent employment of the plaintiff for a series of years, during which time it is not questioned that he was paid his wages, this action being for damages for not continuing the employment

during the lifetime of the plaintiff. There is no evidence that any member of the board of directors or any of the executive officers of the corporation had any knowledge of this alleged contract; the plaintiff was paid, as is customary with many railroad corporations, one-half of his usual wages during the time that he was laid up after the accident in which he was injured, but this does not raise any presumption of liability on the part of the corporation for the accident, and the vouchers and receipts were taken in the ordinary course of business, showing the disposition of the moneys of the corporation. The corporation, so far as the evidence shows, had no other notice of the transaction with the plaintiff, except that as a matter of law the principal is chargeable with notice to or knowledge by the agent of matters affecting the relation or obligations of the principal to third persons, if the agent has such notice or knowledge at the time he is concerned for and acting in behalf of his principal in the execution of his agency. (*Verona Central Cheese Co.* v. *Murtaugh*, 50 N. Y. 314, 316, and authorities there cited.)

Assuming Mr. Watson to have made the alleged contract; assuming that the minds of Mr. Watson and the plaintiff met in an agreement that for and in consideration of the plaintiff refraining from bringing an action the latter should have a life position as gateman, was he in the execution of any agency of the defendant, real or apparent? Was it within the power of the corporation to make the contract in the first instance? If it was not, then clearly the defendant's agent was not acting within the apparent scope of his employment, and the plaintiff could gain no rights under his contract. Corporations are artificial creations, existing by virtue of some statute, and organized for the purposes defined in their charters. A person dealing with a corporation is chargeable with notice of its powers and the purposes for which it is formed, and when dealing with its agents or officers is bound to know the extent of their power and authority. A corporation necessarily carries its charter wherever it goes, for that is the law of its existence. It follows that the plaintiff must have known or is chargeable with knowledge of the corporate powers of the defendant and of the extent to which its superintendent of a division of the railroad could bind the corporation. (*Jemison* v. *C. S. Bank*, 122 N. Y. 135, 140, and authorities there cited.) The defendant's purposes could be manifested

only through agencies duly authorized or having apparent authority to represent it, and persons dealing with the officers of a corporation, or with persons assuming to represent it, are chargeable with notice of the purposes of its creation and its powers and with the authority, actual or apparent, of its officers or agents with whom they deal, and when they seek to charge the corporation with liability upon a contract made apparently in its behalf, the burden is upon them to prove the authority of the person assuming to act as such officer or agent to so make it. ( *Wilson* v. *Kings Co. E. R. R. Co.*, 114 N. Y. 487, 491, 492, and authorities there cited.)

If it appears, therefore, that the defendant had no lawful power to make a life contract with the plaintiff, it must follow that the division superintendent had no such power, either real or apparent, and that he was not acting within the scope of his agency in attempting to make the contract, if he ever did attempt to do so. The defendant could not, as a consequence, be presumed to have had notice of this alleged contract, and the employment of the plaintiff must, therefore, have stood upon no other basis than that of other employees of the corporation, and his employment, in the absence of knowledge on the part of the defendant that it was being performed under this alleged contract, could not work an estoppel. Railroad corporations within this State have their powers defined by the General Corporation Law, the Stock Corporation Law and the Railroad Law (Laws of 1890, chap. 565, as amd.). The General Corporation Law (Laws of 1892, chap. 687) provides in section 11 (as amd. by Laws of 1895, chap. 672) that every corporation shall have power (4) "To appoint such officers and agents as its business shall require, and to fix their compensation, and " (5) " To make by-laws, not inconsistent with any existing law, for the management of its property, the regulation of its affairs," etc. Section 27 of the Stock Corporation Law (Laws of 1892, chap. 688) provides : "The directors of a stock corporation may appoint from their number a president, and may appoint a secretary, treasurer, and other officers, agents and employes, who shall respectively have such powers and perform such duties in the management of the property and affairs of the corporation, subject to the control of the directors, as may be prescribed by them or in the by-laws. The directors may require any such officer, agent or employe to give security for

the faithful performance of his duties, and may remove him at pleasure." Section 29 of the General Corporation Law provides that "the affairs of every corporation shall be managed by its board of directors," and section 10 of the same law (as amd. by Laws of 1895, chap. 672) provides that "No corporation shall possess or exercise any corporate powers not given by law, or not necessary to the exercise of the powers so given," and that the certificate of incorporation "may contain any provision for the regulation of the business and the conduct of the affairs of the corporation, and any limitation upon its powers, or upon the powers of its directors and stockholders, which does not exempt them from the performance of any obligation or the performance of any duty imposed by law."

The superintendent of a division of the defendant's railroad is not given any power to control the affairs of the corporation, either by statute or by-laws, so far as appears in this case, and he certainly could have no power to make a contract of employment which interfered with the absolute right, declared by the statute, to remove any officer, agent or employee at pleasure. This would be to permit a mere agent or servant of the corporation to do what the corporation itself might not do, for it is inhibited the power to make any contract which would deprive the board of directors of the control of the affairs of the corporation or the power to discharge officers, agents or employees at pleasure. This is a power necessary to the proper management of the affairs of the corporation, and the alleged contract of employment for life is, therefore, against the public policy of the State as declared by statute. (See *Carney* v. *N. Y. Life Ins. Co.*, 19 App. Div. 160; affd., 162 N. Y. 453; *Caldwell* v. *Mut. Reserve Fund Life Assn.*, 53 App. Div. 245, 250, and authorities there cited).

But it is suggested that even if this contract is *ultra vires*, the plaintiff having fully performed his contract in refraining from bringing an action (which assumes all of the time that which has not been shown, that the plaintiff had a cause of action), the corporation is estopped from asserting this defense. It is undoubtedly true that a corporation, as in the case of *Whitney Arms Co.* v. *Barlow* (63 N. Y. 62), cannot avail itself of the defense of *ultra vires* where the contract has been fully performed in good faith by the

other party, and the corporation has had the full benefit of the performance and of the contract in a business transaction which is not positively forbidden, and which transgresses no rule of public policy, but the rule is different where the contract is prohibited as against public policy or is immoral. (*Jemison* v. *C. S. Bank, supra,* and authorities there cited at p. 141.)

"A contract of a corporation, which is *ultra vires* in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature, is not voidable only, but wholly void and of no legal effect. The objection to the contract is not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it. When a corporation is acting within the general scope of the powers conferred upon it by the Legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are prerequisites to its existence or to its action, because such requisites might in fact have been complied with. But when the contract is beyond the powers conferred upon it by existing laws, neither the corporation nor the other party to the contract can be estopped, by assenting to it or by acting upon it, to show that it was prohibited by those laws." (*Central Transportation Co.* v. *Pullman's Car Co.,* 139 U. S. 24 ; *Louisville, etc., Ry. Co.* v. *Louisville Trust Co.,* 174 id. 552, 572.)

The proper remedy of the party aggrieved is by disaffirming the contract and suing to recover as on a *quantum meruit* the value of what the defendant has actually received the benefit of. (*Railway Companies* v. *Keokuk Bridge Co.,* 131 U. S. 371, 389, and authorities there cited ; *McCormick* v. *Market Bank,* 165 id. 538, 553, and authorities there cited. See, also, *Central Transportation Co.* v. *Pullman's Car Co.,* 139 U. S. 24; 48 *et seq.,* for a full discussion of this question.) The authorities cited in support of a contrary doctrine in the prevailing opinion, in so far as they have any controling authority upon this court, do not run counter to the conclusion here reached. They all relate to mere business contracts, in

which no rights of the general public are involved, and do not contemplate establishing the proposition that railroad corporations may be tied up by the contracts of subordinate officers, so that the board of directors may not dismiss its employees at pleasure, as the statute specially provides it may do.

The judgment appealed from should be reversed.

JENKS, J., concurred.

Judgment and order affirmed, with costs.