ATLANTIC REFINING COMPANY, A CORPORATION, *Plaintiff in Error*, v. LEFFINGWELL & BERRY, CO-PARTNERS, *Defendants in Error*.

> Where a corporation operates a mining plant and does not authorize its superintendents to employ a physician at the expense of the corporation to attend an employee injured by the machinery of the plant, the law does not imply such authority, at least where there is testimony that such authority was not given or contemplated by those exercising the rights of the corporation. The liability of the corporation for negligence that prpximately injures an employee may extend to medical services to an injured employee, but this does not create a contract liability for such services.

This case was decided by Division A.

Writ of error to the Circuit Court for Manatee County.

The facts in the case are stated in the opinion of the court.

*C. C. Whitaker,* for Plaintiff in Error;

*Singletary & Reaves* and *W. A. Carter,* for Defendants in Error.

WHITFIELD, C. J.—The declaration herein is as follows: "John B. Leffingwell and Ned C. Berry, copartners doing business under the firm name of Leffingwell & Berry, plaintiffs, by their attorneys Singletary & Reaves, sues the Atlantic Refining Company, a corporation, for money payable by the defendant to the plaintiffs for this, that heretofore to-wit: on the 1st day of May, A. D. 1906, the said defendant was indebted to the plaintiffs for medical attendance, advice and medicine given and provided by

the plaintiffs to and for one Thomas Urquhart, an employe of the defendant, at the special instance and request of the said defendant, of the value of $1,000.00; and in the further sum of $1,000.00 for work and labor done by the plaintiffs for the defendant, at its request; and in a like sum for money found to be due the plaintiffs from the defendant on an account stated between them; and in a like sum for interest on divers sums of money forborne by the plaintiffs to the use of the defendant, at and before the date aforesaid; and being so indebted, the defendant, in consideration of the premises, promised to pay to the plaintiffs the said several sums of money so due them as aforesaid which the plaintiffs have often requested the defendant to so do, but the said defendant has disregarded its said promise and has failed, neglected and refused to pay the said several sums of money to the plaintiffs, or any part thereof, to the great damage of the plaintiffs, wherefore they bring this suit and claim as their damage the sum of nineteen hundred dollars."

A trial was had on a plea of never was indebted as alleged. Verdict and judgment for $1,000 and interest were rendered for the plaintiff, a new trial was denied, and the defendant took writ of error with a bill of exceptions. The transcript contains no evidence of an account stated, or of a promise to pay as alleged, therefore the last two counts of the declaration may summarily be regarded as not proven in whole or in part. The other two counts are based on services alleged to have been rendered, the second at the defendant's request, and the first at the defendant's special instance and request.

The evidence in effect is that on February 9, 1906, an employe in the mining plant of the defendant corporation was injured by machinery in the plant, and a superintendent of the mine, Mr. Wadham, telephoned the plaintiff

Leffingwell, a physician, to come to the injured man and to bring another doctor with him. The two plaintiffs went to the place several miles distant in Leffingwell's launch, and were met by the superintendent, Mr. Wadham, who called the physician, and Mr. Parmenter, another superintendent of the mining plant, who took them to the injured man and asked them to take charge of him and Mr. Parmenter asked for a statement of the condition of the injured man to be sent to the home office of the corporation in Philadelphia, Pa. The superintendents stated to the doctors that the man was injured by the machinery of the defendant and requested the physicians to take charge of the injured man who was unknown to Leffingwell, and to give their medical services to him. The injured man was removed to his home where the physicians attended him on different days before March 1, 1906. On March 1, 1906, the plaintiffs in a letter addressed to Mr. Parmenter reported the condition of the patient and said: "Inasmuch as we have not seen you for some time we would be glad to have some expression from you in regard to our services in this case." No reply to the letter was received, and a few days later Mr. Parmenter when asked about the compensation told the plaintiff Leffingwell that the defendant company would not pay the bill; that the injured man "will pay the bill." On February 12, 1906, Wadham and Parmenter, the superintendents, wrote the vice-president of the corporation at Philadelphia, Pa., of the condition of the injured man, and that a physician who rendered immediate services charged $5.00, and stated that physicians at that place charge not less than five dollars a visit, and that the two who were attending the man had already made five visits, and also said: "We wish to know what part of these expenses you desire the company to bear. In the only other accident

which this department has had to deal with the company paid both the man's wages and his doctor bills, but this was a case of but two weeks duration." On February 17, the vice-president of the company in reply said: "We have your favor of February 12th, in regard to young Urquhart, who was injured at your plant on February 9th, and we are very happy to learn that the injuries he received are less grave than was first anticipated.

While we, as manufacturers, are not responsible for doctors' bills incurred by patients in the treatment of injuries received by accident in our factories, in this particular case, we are willing to pay such bills indirectly. The company assumes no responsibility even for doctors' bills incurred when in emergency a physician is summoned by the company. All bills should be rendered to the patient, and we will advance him such money as is necessary to pay fair and reasonable charges for medical attention. You should pay the emergency doctor's bill of five dollars at once. It is also our wish that the young man should have such nursing and care as is necessary, and we do not wish him to suffer for lack of medicines or surgical appliances. You should make a definite agreement with the nurse as to her charges, and advance the money to the patient, so that he may pay for same. It is essential that the doctors understand that we do not assume the responsibility of their bill, although it is our intention, as stated above, to pay indirectly all fair and reasonable expenses of this kind, for, if the physicians bill the company direct, they are apt to render excessive charges. You are also authorized to advance such money as is necessary for the injured man's current expenses. It is our purpose, when the young man is sufficiently recovered to be about, to make with him a fair and square settlement, notwithstanding we do not believe there is any

liability on our part, (judging from the facts submitted in the case,) * * * ."

There is evidence that the superintendents of the mining plant had no authority to employ physicians at the expense of the company to attend injured employees, and that the custom of the company was not to allow such a liability to be incurred by its agents or superintendents, and there is no testimony that such authority was given the superintendents in this case. Under this testimony the plaintiffs are not entitled to recover on the first two counts which allege that the service was rendered at the special instance and request of the defendant, and at the defendant's request, unless the duties of the superintendents by implication of law gave them authority to request the services for and at the expense of the defendant corporation, notwithstanding the testimony that no such authority was given or contemplated by the corporation or by those who exercise its rights. The liability of the corporation for negligence of its agents and servants that proximately injures an employee may extend to medical services to an injured employee, but this liability does not give rise to a contract liability for such services. An issue of liability for negligence and the effect of contributory negligence has no relation to the claim here made.

In view of the testimony here it is not clear that the duties of the superintendents of the mining plant are such that the law implies therefrom authority to employ physicians for the company to attend employees of the company injured by its machinery. This being so a request of the superintendent to render the medical services, is not in law a request of the company, and as a consequence the liability of the company is not shown. A new trial should have been granted.

The judgment is reversed.

SHACKLEFORD and COCKRELL, J. J., concur;

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.