JOHN T. WARD *vs.* J. SAMUELS & BRO., Inc.

APRIL 7, 1915.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1) Principal and Agent. Contracts. Physicians.*

In an action to recover for professional services of a physician, in the treatment of an employee of defendant, it appeared that for more than two years prior to the services in question, plaintiff had been summoned by the superintendent of defendant to attend persons sick or injured in the store of defendant. The superintendent testified that he informed plaintiff of the limitation upon his authority to bind defendant beyond first aid treatment. Plaintiff denied this.

*Held,* that the question of plaintiff's knowledge as to the extent of the authority of the superintendent was one for the determination of the jury.

*(2) Principal and Agent. Physicians. Contracts.*

As a general rule the superintendent of a mercantile corporation has no implied authority to bind the corporation to pay for the services of a physician called by the superintendent to attend an employee injured in the course

of his employment, but the corporation by its previous conduct may have so held the agent out as one having full authority to employ physicians that it will not be permitted to disavow the agent's acts in that regard.

(3)   Personal Services.   New Trial.

In an action to recover for professional services of à physician called by the superintendent of defendant to treat an employee injured in the course of his employment, after verdict for plaintiff:

Held, that as there was evidence both as to previous transactions of a similar character and also as to defendant's silence in the case at bar after it had notice that plaintiff was performing the services, which if believed by the jury, would warrant the finding, the verdict would not be disturbed.

(4)   Personal Services.   Waiver.

In an action by a physician to recover for services rendered to an injured employee of defendant, it appeared that for more than two years plaintiff had attended many of defendant's employees upon the call of the superintendent without knowledge of any limitation on the authority of the latter and in every case bills had been rendered to defendant.

Held, that the fact that in some cases upon request of the superintendent, plaintiff had made out another bill against a Benefit Association which had been paid, was not a waiver of his claim against defendant.

(5)   Personal Services.   Principal and Agent.   Notice.

Notice to an agent of a mercantile corporation, especially empowered to attend to employees injured in the store and to engage physicians for their treatment to a limited extent at least, regarding the conduct and claims of physicians so employed, constitutes notice to his principal, and where such agent has knowledge that a physician is continuing to treat a case with the intention of holding the principal responsible, it is the duty of the principal to explain the limitation upon the authority of its agent, and where it remains silent it will not be permitted later to deny liability.

PARKHURST AND VINCENT, JJ., dissenting.

ASSUMPSIT.   Heard on exceptions of defendant and overruled.

SWEETLAND, J.   This is an action to recover compensation for professional services performed by the plaintiff, as a physician, in the treatment of John McHenry an employee of the defendant.

The case was tried before a justice of the Superior Court sitting with a jury.  The jury returned a verdict in favor of the plaintiff for the full amount of his claim.  The case is before us upon the defendant's exceptions to certain

rulings of said justice made in the course of the trial, and to the decision of said justice denying defendant's motion for a new trial.

The defendant conducts an extensive retail department store in Providence known as the "Manufacturers Outlet Company" and employs therein a large number of salesmen and other servants.

In 1910 at the time said professional services were rendered, the management of said store was in a superintendent named Steiner and an assistant superintendent named Solomon. In case of physical injury to an employee or a customer in said store the defendant had instructed its superintendent and assistant superintendent to immediately summon and employ a physician to attend the injured person. The defendant claimed however that the authority of its superintendent and assistant superintendent in that regard was limited to the employment of a physician to render first aid, so-called, to the person injured, and that they were without authority to bind the defendant for the further medical treatment of such injured person. For more than two years before rendering the services which are the subject of this suit, the plaintiff had been summoned from time to time by said assistant superintendent, Mr. Solomon, to attend persons who were sick or injured in said store. Both Mr. Steiner and Mr. Solomon testified that they informed the plaintiff of the limitation upon their authority to bind the defendant for the services of physicians; and they further testified that at different times, and especially at the beginning of the services now in question, they warned the plaintiff that he would not be paid by the defendant for any professional treatment beyond first aid, which he might render in cases to which he was called by them. The plaintiff denied that he received such information and warning or that he knew of any limitation placed upon the authority of Mr. Steiner or Mr. Solomon to bind the defendant in said transactions. The question of the plaintiff's knowledge as to the extent

of the authority of the defendant's superintendent and assistant superintendent was therefore one for the determination of the jury. In the summer of 1910 the said John McHenry, a boy in the employ of the defendant, was severely injured while upon one of the elevators in the defendant's store. Mr. Solomon, who was at that time acting as superintendent, in the absence of Mr. Steiner, notified the plaintiff and sent the McHenry boy to the plaintiff's office. During the first treatment Mr. Solomon came to the plaintiff's office and afterwards carried John McHenry to his home in an automobile. The plaintiff continued the treatment of McHenry until he was cured, making charges for said service against the defendant upon his books of account.

The contention of the defendant is that there is no evidence in the case of express authority given by it to Mr. Solomon to employ the plaintiff, or any other physician, for the entire treatment of John McHenry; that properly authority cannot be implied in Mr. Solomon as assistant superintendent or as acting superintendent to engage a physician to attend an employee of the defendant injured in its service; and that there are no other circumstances in the case which warrant the finding that the defendant is liable on any claim of the plaintiff beyond the charge for the first treatment given by the plaintiff to John McHenry.

At the close of the testimony the defendant moved that said justice direct a verdict for the plaintiff for twenty-five dollars only, that sum being the amount of the plaintiff's charge for his first treatment of John McHenry; the motion was denied and the defendant excepted. After verdict the defendant moved for a new trial on the ground that said verdict was contrary to the evidence and the weight thereof, this motion was denied and the defendant excepted. We will consider these two exceptions together.

The only evidence in the case as to the actual authority of Mr. Steiner and Mr. Solomon in this matter is contained in the testimony given by them. They both testify that

their authority was limited to the power of hiring a physician for first aid to employees or others, sick or injured in said store.

(2)    As a general rule the superintendent of a mercantile corporation has not implied authority to bind said corporation to pay for the services of a physician whom such superintendent has called to attend an employee of the corporation who has been injured in the course of his employment. Some cases have held that a superintendent or a superior servant of a railroad company, by reason of the peculiar nature of its business, has implied authority to bind said company for a physician's first aid services, rendered to injured employees, but to no greater extent. This court however in *Hall* v. *N. Y., N. H. & H. R. R.*, 27 R. I. 525, has held that, in case of the employment, by an unauthorized agent of a corporation, of a physician to attend one of the servants of said corporation, who has been injured in the course of his service, without restriction as to the extent of the medical attendance to be given by said physician, the corporation, after notice of such employment, by its conduct and by its silence, may be held to have ratified the acts of its agent or to be estopped from denying the agent's authority. In that case it appeard that the plaintiff had been called to attend an injured employee of the defendant by one of its station agents who was not shown to have authority in the premises; that the plaintiff took charge of the sufferer and on the next day prepared a written report setting out the fact that he had been called by said station agent and containing a brief statement of the injured man's condition. This report the plaintiff sent to the principal office of the defendant by one of its foremen. In said report the plaintiff did not specifically notify the defendant that he should continue in charge of the case or that he should look to the defendant for his pay. It also appeared that on two occasions the claim agent of the defendant and its physician visited the injured man to learn his condition; that at the completion of his service

the plaintiff sent bills for the same to the defendant, which took no notice of them. The court said at page 530, "Whether the facts and circumstances surrounding the transaction do or do not constitute a ratification upon the part of the corporation is a question of fact to be determined by the jury under proper instruction from the court." The court sustained a verdict for the plaintiff for the full amount of his claim. The defendant in that case was a railroad company, but the rule therein recognized is one (3) of general application. Also, notwithstanding the absence of actual authority in the agent and the unwillingness of the law to imply such authority from the nature of the agent's general powers, nevertheless the corporation by its previous conduct may have so held the agent out as one having full authority to employ physicians, that it will not be permitted later to disavow the agent's acts in that regard.

It is the contention of the plaintiff that, whatever may have been the real powers of Mr. Solomon, the verdict of the jury was warranted upon the testimony as to previous transactions of a similar character between the plaintiff and the defendant, and also upon the testimony as to the defendant's silence after it had notice that the plaintiff, in the circumstances of the case, was proceeding to perform the services for the payment of which he now sues.

We are of the opinion that there was evidence before the jury which, if believed by them, supports both of these contentions of the plaintiff. There was testimony from which the jury might find that Mr. Solomon had authority to employ physicians to attend defendant's servants injured in its store; that for more than two years before the case of McHenry the plaintiff had attended a large number of the defendant's servants upon the call of Mr. Solomon without knowledge on the part of the plaintiff of the limitation upon Mr. Solomon's authority, which is now claimed; that the plaintiff had given to said injured servants the medical attention which their cases required, whether of

first treatment or more; that in every case the charges for said services had been made by the plaintiff against the defendant alone, and bills for the same had been rendered to it; that the defendant through its responsible agents was aware of these facts; that in every case the plaintiff's charges against the defendant had been paid either by the defendant itself or through its agency in such a manner as to give no notice to the plaintiff that the defendant questioned its liability to him. The defendant denies that the testimony shows the last fact in cases in which there were services rendered by the plaintiff in addition to first aid. It appears that there was a distinct corporation known as the "Outlet Mutual Benefit Association," which had for its purpose some benefit to the employees of the defendant. Mr. Steiner, the defendant's superintendent, was the president of this corporation. The jury were warranted in finding from the testimony that in all cases in which the plaintiff had given more than first aid attention to the injured employees, he had charged his entire services against the defendant and had rendered his bill for said services to the defendant and that subsequently in certain cases, if not in all but one, upon the request of the defendant's superintendent he had made out another bill for said services against the Outlet Mutual Benefit Association, which latter bill had been paid; but that the plaintiff had rendered the services on account of the defendant, upon what he had a right to believe was the defendant's request; that in these cases he had not waived his claim against the defendant, but had made out his bill in the form stated for the accommodation of the defendant, in furtherance of some arrangement that the defendant had with said Benefit Association, as to which the plaintiff was not interested. The finding that these circumstances did not constitute a denial of liability on the part of the defendant or a waiver of his claim on the part of the plaintiff is in some measure supported by an examination of the bills made out against said Benefit Association, which are ex-

hibits in the case. These exhibits appear to be for the full services of the plaintiff in the cases therein itemized and contain charges not only for the subsequent treatment of the patients, but also for the first treatment or first aid, as to which latter service the defendant does not deny its own liability to the plaintiff and as to which latter service it is unlikely that the plaintiff would make a charge against another corporation, except upon the request and for the accommodation of the defendant. Another case is that of an employee of the defendant named Max, treated by the plaintiff upon the call of Mr. Solomon, in which case without question the defendant paid for the subsequent as well as the first treatment of the patient. The defendant seeks to minimize the effect of this circumstance by claiming that it was instructed so to do by an indemnity insurance company, and that this was within the knowledge of the plaintiff. The jury might well find from the testimony that the plaintiff had no knowledge in the Max case of any circumstances amounting to notice that the defendant questioned its liability to pay for the full service of the plaintiff.

The testimony also warrants a finding of facts by the jury which would bring this case within the rule in *Hall* v. *N. Y., N. H. & H. R. R.*, 27 R. I. 525. It appeared that Mr. Solomon was the agent of the defendant especially empowered to attend to employees injured in the store and to engage physicians for their treatment to a limited extent at least. In these circumstances notice to Mr. Solomon with reference to the business thus delegated to him, including notice regarding the conduct and the claims of physicians so employed by him must be held to constitute notice to the defendant. According to the testimony of the plaintiff and his witnesses, although the facts are denied by Mr. Solomon, Mr. Solomon knew that the plaintiff had taken the McHenry case with the expectation of treating the patient as long as medical attention should be required in the case, that he was continuing such treatment, and further

that in the circumstances the plaintiff would probably regard the treatment as rendered on account of the defendant and to be charged to it. These facts being known by its responsible agent, having the duty to act upon them himself or to report them to the defendant, it became the legal duty of the defendant to early apprise the plaintiff of the true condition of affairs, to explain the extent of the authority of Mr. Solomon and the limit that it intended to place upon its own liability. If in these circumstances Mr. Solomon and the defendant remained silent the defendant will not be permitted now to deny its liability. *Hall* v. *R. R. supra.*

From this consideration of the law and the evidence in the case we find no error in the ruling of said justice on the motion to direct a verdict or in his decision upon the motion for new trial.

We have considered the other exceptions of the defendant taken to rulings of the justice made during the trial and find no merit in either of them. Each of said rulings permitted questions to be asked as to conversations held with the agents of the defendant as to matters with regard to which it is not questioned that said agents had a certain authority, and with regard to which the jury might find that said agents had been held out by the defendant as having full authority.

All of the defendant's exceptions are overruled and the case is remitted to the Superior Court for the entry of judgment upon the verdict.

VINCENT, J., dissenting. This is an action of assumpsit brought to recover the sum of $175 for services rendered by the plaintiff, as a physician, in the treatment of one John L. McHenry, who received some personal injuries while in the employ of and upon the premises of the defendant. The jury in the Superior Court rendered a verdict for the the amount of the claim and the trial judge denied the defendant's motion for a new trial.

McHenry, upon the happening of the accident, was taken to the office of the plaintiff by Mr. Solomon, the defendant's assistant superintendent, for the purpose of receiving surgical aid. Mr. Solomon was performing the duties of superintendent in the absence of the regular superintendent, Mr. Steiner. After being treated at the plaintiff's office the boy was further attended by the plaintiff at the former's temporary home in Warwick and later at his home in Providence and received still further treatment, from time to time, at the plaintiff's office, the whole service extending over a period of about two months.

The bill of the plaintiff for $175 includes $25, which is the amount of his charge for "first aid" services. The defendant denies its liability for anything beyond the "first aid" service, but at the same time does not contend that, if there is liability for subsequent treatment, the sum of $175 is unreasonable.

There is some conflict of testimony in regard to the instructions which the plaintiff had received in former cases from both the superintendent, Mr. Steiner, and the assistant superintendent, Mr. Solomon, and especially as to whether the plaintiff had been advised by them at some time, or from time to time, that his services for the defendant were limited to "first aid" charges. Both Mr. Steiner and Mr. Solomon testified that they had no authority from the defendant corporation to employ doctors except for such immediate and perliminary treatment as might be required and Mr. Solomon, who was more immediately connected with this particular case, testified that he informed the plaintiff that the latter's employment had reference only to "first aid" services; that all subsequent treatment must be arranged for by the parents of the boy and that he informed the latter to the same effect.

The plaintiff denies that his services were thus limited, either generally or in this particular case, and he asserts that he was authorized and directed by Mr. Solomon to render treatment to the McHenry boy without regard to

"first aid" and that in obedience to such instruction he performed the services for which he is now seeking to recover compensation. The plaintiff introduced no evidence tending to show that the superintendent or assistant superintendent was invested with any express authority to procure anything more than "first aid" services. The plaintiff however contended that he had been connected with several cases prior to the McHenry case in which he had been paid by the defendant for subsequent treatment.

The transcript of testimony does not contain any evidence tending to establish any express authority given to Steiner or Solomon to contract or render the defendant liable for subsequent services. Both Steiner and Solomon testified, without contradiction, that they had no other or further authority than the employment of doctors for "first aid." Under these circumstances the trial justice in the Superior Court instructed the jury that Solomon was without authority to engage a doctor for more than "first aid.."

The next question which naturally arises is as to the implied power of Mr. Solomon to render the defendant liable to the plaintiff for subsequent services.

The majority opinion of the court recognizes the general rule that a superintendent of a mercantile corporation has no implied authority to bind the corporation to pay for the services of a physician whom such superintendent has called to attend an employee injured in the course of his employment. I see no reason for considering the present case as an exception to the general rule. In fact the great weight of authority is to the effect that a superintendent of a manufacturing or mercantile establishment cannot bind the employer or corporation for medical services.

In the case of *Atlantic Refining Co.* v. *Leffingwell & Berry*, 61 Fla. 101, the opinion of the court is well summarized in the headnote as follows: "Where a corportion operates a mining plant and does not authorize its superintendents to employ a physician at the expense of the corporation to attend an employee injured by the machinery

of the plant, the law does not imply such authority, at least where there is testimony that such authority was not given or contemplated by those exercising the rights of the corporation. The liability of the corporation for negligence that proximately injures an employee may extend to medical services to an injured employee, but this does not create a contract liability for such services."

In the case of *Harris* v. *Vienna Ice Cream Co.*, 91 N. Y. Supp. 317, the plaintiff rendered medical services to two employees of the defendant under the authority and at the request of the president and secretary of the defendant who promised the plaintiff remuneration for his services and the court granting these facts held the defendant not liable, saying: "The record is without evidence to show that the services rendered were for its benefit or in satisfaction of a claim, if any there might be, against it. 'Persons dealing with the officers of a corporation, or with persons assuming to represent it, are chargeable with notice of the purpose of its creation and its powers, and with the authority, actual or apparent, of its officers or agents with whom they deal.' *Wilson* v. *Kings County El. R. R. Co.*, 114 N. Y. 487, 491. The contract presently in suit may not be said to fall within the purpose of the creation of the Vienna Ice Cream Company, nor does the evidence disclose corporate benefit, or authority, actual or apparent, in its president or secretary, to obligate it in the particular instance." '

In *Swazey* v. *Union Manufacturing Co.*, 42 Conn. 556, it was held that the general manager of a business corporation had no implied authority to employ a physician to attend an employee injured in the discharge of his duty even though he had reason to believe that the company was guilty of negligence and in speaking of the action of the general manager in that regard the court said: "He was a servant of the defendant, appointed by its directors. The extent of his power to bind the corporation depends in part upon its by-laws, if any such there be, touching his office; in part upon the language of the vote of the directors appoint-

ing him, if any such appears of record; in part upon their knowledge and approval of, or the acquiescence of the corporation in, acts performed by him; and in part upon usages which may be shown to exist, controlling the matter."

In case of *Cushman* v. *Cloverland Coal & Mining Co.*, 170 Ind. 402, where a physician was called by the defendant's superintendent to attend an injured employee and where the superintendent immediately reported his action to the president and general manager, the latter ratified and confirmed the same, requesting the plaintiff to supply the injured employee with necessaries, the court held there was no liability on the part of the defendant, saying: "Another general rule, apparently of universal acceptance, is that officers of corporations organized for, and engaged in, commercial pursuits, without special authority, cannot, as a legal right, charge the corporation with the employment of physicians and surgeons to attend upon sick or injured employees. . . . There is no greater or different reason for holding a private mining corporation responsible for supplying medical aid for its employees than appertains to all kinds of manufacturing bodies; and we perceive no reason why corporations of either class, under ordinary circumstances, should be required to furnish their workmen with medical services any more than they should be required to furnish them with dinners."

In a similar case, *Sourwine* v. *McRoy Clay Works*, 85 N. E. 782 (Ind. App.) it was held that corporations whose business is "stationary" are not bound to furnish their employees with medical services and the general officers of such corporations cannot incur liability for such services on behalf of the corporation, and the severity of the injury to the employee, or even his death, would not affect the corporation's liability, the court stating specifically that, "Persons employed by stationary corporations, such as coal mining and clay companies, should, if they desire surgical attention, make provisions therefor in advance of accident; for they must know that accidents are liable

to happen. If they fail to do so, and their 'family, friends, and acquaintances' fail to come to their aid, charitable doctors are to be found in every community, responding to that call to which 'stationary corporations' are by law deaf.''

In the case of *Spelman* v. *Gold Coin Mining & Milling Co.*, 26 Mont. 76, employees were injured in the course of their employment and were taken to a hospital for treatment of which the plaintiff was surgeon. The day following the accident the defendant's general manager telegraphed to the plaintiff to spare no expense in giving the assistant manager the best possible nursing and attention and to provide surgical and hospital treatment for the other employees and that he would pay the expenses thereof. Later the general manager assured the plaintiff that the company would pay for all services. The bill of an eye specialist whom the plaintiff employed was paid by the check of the defendant company. The court, however, affirmed a judgment for the defendant and in the course of its opinion said: "He (general manager or other agent of a corporation) cannot, however, bind his principal by a contract to confer a gratuity or bestow a charity, however strong the promptings of humanity may be. He acts for and is virtually the company itself in those matters only which have to do with its ordinary business and are within the scope of the duties delegated to him for performance. Unless the limits of his authority are shown to have been enlarged, the duties of the general manager are confined to the transaction of the business of the corporation as distinguished from its mere ethical duties and consequent imperfect obligations, or supposed charities. The fact that a certain person is general manager of a mining company does not in and of itself imply authority in him to bind the company in matters other than those of business affairs. It may not be said, as matter of law, or declared as a fact judicially known, that general managers of mining corporations are usually clothed with such authority as that assumed by Loomis (the general manager'').

The authorities make some distinction between cases of injury to the employees of a business or mercantile corporation and those arising from injuries to employees of railroads.  The distinction arises from the different situation which the railroad employee occupies.  The injury to the railroad employee is likely to, and frequently does, occur at a distance from the employee's home, where he is unknown and where he would be temporarily, at least, without means to employ medical assistance, but in those cases the implied authority only extends to "first aid" and not to subsequent treatment.  *Southern Railway Co.* v. *Grant*, 136 Ga. 303; *Holmes* v. *McAllister*, 123 Mich. 493; *Terre Haute & Indianapolis Railroad Co.* v. *McMurray*, 98 Ind. 358.

The plaintiff has cited the case of *Hall* v. *N. Y., N. H. & H. R. R. Co.*, 27 R. I. 525, with particular reference to page 527.  In that case the plaintiff, a physician, was called to attend the injured employee by a station agent and on the day following the accident prepared and forwarded to the main office of the defendant at New Haven, Connecticut, a report of the case describing the nature and extent of the injuries and that a trained nurse had been employed and was in attendance.  The report clearly indicated that the services of a physician would be likely to be required for some time and that the plaintiff was giving the case his professional attention.  There was some question as to whether the report of the plaintiff, which was sent by a messenger, had been received by the defendant, but the court held that the report being in the possession of the defendant at the trial it would be presumed, in the absence of any testimony to the contrary, that it had been delivered to the defendant with reasonable celerity.  To this report the plaintiff received no reply from the defendant, but later the injured party was visited by the claim agent and also by the physician regularly employed by the defendant for the purpose of ascertaining if the condition of the patient was such as would permit his removal to a hospital.  From

the silence of the defendant, after being apprised of the facts regarding the accident and the condition of the injured man, and the subsequent visits of the claim agent and doctor, it would be reasonable for the plaintiff to infer that such visits came about through the report and were in response thereto. Besides, the purpose of the visits being to ascertain whether the condition of the injured man would permit his removal to a hospital would naturally indicate to the plaintiff the intent of the defendant to assume the expenses of his care and treatment.

The case presents a very different situation from that of the case at bar. In the present case the plaintiff made no report to the defendant corporation of any kind. He did not communicate with it in any way which might suggest an intention of charging the defendant for subsequent service or even that he was rendering subsequent services at all. The record fails to show any act or acts apparently authorized or directed by the corporation, like the visits of the claim agent and doctor in the Hall case, which would manifest any intention on the part of the defendant to assume the care of the person injured and the expense of his treatment.

That the plaintiff here, according to his own testimony, had no idea of looking to the defendant for compensation for subsequent services, at the time when such services were rendered, is a matter which will be discussed later.

The plaintiff claims that through the course of dealing which had obtained for a long time between himself and the defendant that he was justified in rendering the subsequent services to the McHenry boy and charging the same to the defendant. In other words, that the defendant by reason of its previous conduct in similar matters is estopped from denying its liability to compensate the plaintiff for his subsequent services to the McHenry boy.

The principles of law governing questions of this sort are laid down in 31 Cyc. 1240 *et seq.* and are supported by numerous authorities therein cited. These principles are

found to be (1) that no estoppel can arise without some sufficient representation by word or conduct made with the intention that they should be acted upon, or made under circumstances which would induce a responsible and prudent man to believe that they were intended to be acted upon; (2) that where the estoppel is based upon the principal's acquiescence in or recognition of another's assumption of authority it must appear that the principal had knowledge thereof or else there can be no estoppel; (3) that in order to estop a man from denying the authority of another to act for him it is essential that his representation of authority, whether by word or conduct, should have been believed and relied upon in good faith by the person asserting the authority and also that such persons should have been misled by the representation; (4) that if the person asserting estoppel knew that no authority in fact existed or should, as a responsible, prudent man, have known that fact or been acquainted with facts suggesting an inquiry which would have led to the discovery of the want of authority on the part of the agent, no estoppel arises; and (5) that an estoppel will not serve where one relies upon the agent's alleged declaration of authority and makes no further inquiry.

In the first place the power of the agent cannot be determined by his own acts but must be determined by the acts of the principal. This proposition of law is well established by authority and is succinctly stated in the case of *Bush Grocery Co.* v. *Conely*, 61 Fla. 131, as follows: "If one holds another out to the world and accredits him as his agent he is bound by that person's acts done within the scope of the agency thus given to him. In such cases the question is, not what authority was intended to be given to the agent, but what authority was the third person dealing with him justified from the acts of the principal in *believing* was given to him." See, also, *Wierman* v. *Sugar Co.*, 142 Mich. 422, 438; *Mechanics Bank* v. *R. Co.*, 13 N. Y. 599; 1 A. & E. Encyc. of Law (2d ed.) p. 990.

The plaintiff contends that he was justified in believing that his subsequent services in the case of the McHenry boy were chargeable to the defendant through certain acts and statements of the defendant's superintendent and assistant superintendent and in believing that the defendant would pay him for such subsequent treatment. There is however no testimony that the defendant ever had knowledge, or notice of any kind, as to any prior payments, by its agents, to the plaintiff on account of subsequent services.

The plaintiff seems to rely upon the acquiescence of the defendant in the unauthorized action of its agents in paying for subsequent services rather than upon any express authority to them to do so. Such acquiescence, the plaintiff contends, is shown by the fact that the defendant had previously compensated him for subsequent services. To quote again from 31 Cyc., *supra*, we find the law on this point to be that "if the claim of estoppel is based on the alleged principal's acquiescence in or recognition of another's assumption of authority, it must appear that he had knowledge thereof else no estoppel arises." See, also, *Bank of Montreal* v. *Ingerson*, 105 Ia. 349; *Manning* v. *Leland*, 153 Mass. 510.

There is no evidence of any prior payment made by the defendant or by its agents covering subsequent services, either authorized or unauthorized. To refute the plaintiff's contention that he was in any way led to believe that his services rendered to the McHenry boy, subsequent to "first aid," were to be paid by defendant, it is only necessary to examine his own testimony.

The plaintiff began to attend people injured at the defendant's place of business in 1908, and he thinks that his services were required from twelve to twenty times in that year. He continued his services during the years 1909 and 1910, although the frequency with which they were demanded during the last two years does not appear, but it is apparent that he often rendered professional services

during that period either at the defendant's place of business
or at his own office at the instance of Mr. Solomon, the
assistant superintendent.  Upon two occasions he had an
interview with Mr. Steiner, the superintendent, but such
interviews related entirely to questions arising about the
plaintiff's bills for services which had been already rendered.
The plaintiff testifies that during the three years mentioned
it was his custom to send his bill to the defendant; that
they would pay it; and that sometimes he sent them
through the mail and sometimes delivered them personally,
evidently intending that it should be inferred therefrom
that he had sent his bills to the defendant and the defendant
had paid them with full knowledge of all the facts.  He
testifies that in 1908 he had a talk with Mr. Steiner about
the case of Theodore Max and that his second interview
with Mr. Steiner was in reference to the McHenry case
in 1910.  There was objection on the part of Mr. Steiner
to the bill in the Max case and some discussion as to the
propriety of the plaintiff's charge for subsequent services
and Mr. Steiner, in the presence of the plaintiff, called up
the representative of an accident insurance company and
some arrangment was made which resulted in the payment
of the plaintiff's bill.  The plaintiff says that he always
charged his services to the defendant, but he admits that in
some cases his bills for services were rendered to and paid by
the Outlet Mutual Benefit Association, which he understood
to be a separate concern; that Mr. Solomon sent people
to him to be treated at the expense of that association;
and that he did not know when he was rendering his ser-
vices whether they were for the Outlet Mutual Benefit
Association or not and he only became apprised of that
fact when he submitted his bill.  The plaintiff admits, on
cross-examination, that three of his bills for services, one
of February 1, 1910, and two of April 1, 1910, which he
had in the first instance charged to the Outlet Company
and were afterwards sent to the Outlet Mutual Benefit
Association, were in his own handwriting; that he rendered

his bills to Solomon, who then told him to whom they should be sent; and that he did not know until a bill was rendered for whom he had been doing work. Out of all the services rendered by the plaintiff he can recall but one instance where he can make any claim that he was recompensed for more than "first aid" services, and that was in the case of Theodore Max in which it appears that the bill was finally adjusted by the insurance company after a dispute, although he was called from a dozen to twenty times in 1908 and did all of the business of that description in the years 1908, 1909 and 1910.

There is no testimony that the defendant had any knowledge as to the settlement of the Max case, whatever the settlement may have been, but if it be assumed, though such an assumption is entirely unwarranted, that the settlement in the Max case was subsequently approved by or acquiesced in by the defendant and that the bill contained a charge for subsequent services, the approval of a single unauthorized act is not sufficient to estop the principal in a subsequent case, especially where the single act followed a dispute between the parties. *Woods* v. *Francklyn,* 19 N. Y. Supp. 377, 46 N. Y. St. 396; *Temple* v. *Pomroy,* 4 Gray, 128; *Paige* v. *Stone,* 10 Metcalf, 160; *Davis* v. *Kneale,* 97 Mich. 72; *Southern R. Co.* v. *Grant,* 136 Ga. 303.

In *Woods* v. *Francklyn, supra,* the court said: "We are unable to find any sanction in principle or authority for holding that the ratification of a single act would justify an inference that any further similar act would likewise meet with recognition, or that the assumed agent is thus empowered to subject the alleged principal to liability upon subsequent unauthorized contracts."

If anything further is needed to show the utter absurdity of the plaintiff's claim that he understood that he was rendering subsequent services to the McHenry boy upon the authority of the defendant or with the defendant's acquiescence in the acts of its agents, it is to be found in his final statement that after the services were rendered to the

McHenry boy he went to see Mr. Solomon to talk over the case and to find out to whom he should send the bill. In the face of this testimony, the claim of the plaintiff that he rendered subsequent services to the McHenry boy supposing or understanding that he was authorized to do so by the defendant and at the defendant's expense is simply preposterous.

I have not considered the exceptions of the defendant as to the admission or rejection of testimony as in my view of the case such consideration would be entirely unnecessary. I am of the opinion for the reasons given and upon the authorities cited that the defendant's exception numbered five should be sustained and that the case should be remitted to the Superior Court with direction to enter judgment for the plaintiff for $25, and that the other exceptions of the defendant should be, *pro forma*, overruled.

PARKHURST, J., concurs in opinion of VINCENT, J.

*McGovern & Slattery,* for plaintiff.

*Wilson, Gardner & Churchill,* for defendant.