### In re WATERTOWN GASLIGHT CO.

(Supreme Court, Appellate Division, Third Department. June 18, 1908.)

1. GAS—GAS COMPANIES—GAS COMMISSION—DUTIES—STATUTE.

Stock Corporation Law, Laws 1890, p. 1073, c. 564, § 42, as amended by Laws 1901, p. 961, c. 354, provides that no corporation shall issue stock or bonds except for money, and for labor done or property actually received for the lawful use of the corporation, and section 44 provides that a corporation may increase or reduce its capital stock in the manner therein provided, but not beyond any maximum or minimum prescribed by general law governing corporations formed for similar purposes. The Gas Commission Law, Laws 1905, p. 2097, c. 737, § 12, provides that stocks or bonds shall not be issued by any corporation thereafter formed which is subject to the supervision of the commission, until the commission shall certify in writing the amount of stock or bonds reasonably required for corporate

purposes, and that an existing corporation shall not increase its capital
stock or bonded debt without such consent in writing, and the commission
may take and hear testimony, examine books, etc., in arriving at its con-
clusion. *Held*, that the duties of the commission are administrative to re-
quire companies to observe the provisions of the law, and, when its con-
sent is asked for the issue of stock or bonds, it is required to determine
whether such stock and bonds are to be issued for property, labor, etc.,
and for the reasonable requirements of the company.

:2. SAME—VALIDITY OF LEGISLATIVE REGULATIONS—INDEBTEDNESS.

The Legislature has the right to authorize the commission to prohibit
the issue of stock and bonds until the commission has approved of the
issue as being within the reasonable requirements of the company.

.3. SAME—CONSTITUTIONALITY.

Section 12 of the gas commission law (Laws 1905, p. 2097, c. 737) applies
to an increase of stock or bonds by an existing company, and is constitu-
tional.

·4. SAME.

Stock Corporation Law, Laws 1890, p. 1073, c. 564, § 42, as amended by
Laws 1901, p. 961, c. 354, provides that no corporation shall issue stocks
or bonds except for money, and for labor done or property actually re-
ceived for lawful corporate purposes, and section 44 provides that a cor·
poration may increase or reduce its capital stock in the manner therein
provided, but 'not beyond any maximum or minimum prescribed by gen-
eral law. Gas Commission Law, Laws 1905, p. 2097, c. 737, § 12, provides
that stocks or bonds shall not be issued by a corporation thereafter form-
ed which is subject to the supervision of the commission until the com-
mission certifies that they are reasonably required for corporate purposes.
When the present owners purchased the plant of petitioner gas company,
the company had a capital stock of $100,000; the present owners paying
$187,500 for the stock, or $87,500 over its par value. It did not appear
what surplus, if any, the company then had or what dividends it had paid
prior to the purchase. *Held*, that the fact that the stock sold for a premi-
um of $87,500 did not under the circumstances justify the capitalization of
that sum or the issue of new stocks or bonds against it.

:5. CORPORATIONS—OFFICERS—DIRECTORS—DUTIES.

The directors of a corporation are its agents and trustees, and have con-
trol and management of its affairs for the benefit of the stockholders and
the reasonable service of the public, and, until it appears otherwise, it is
presumed that their acts were honest and in the best interests of the com-
pany.

·6. GAS—GAS COMPANIES—CAPITAL—INCREASE—GROUNDS.

Stock Corporation Law, Laws 1890, p. 1073, c. 564, § 42, as amended by
Laws 1901, p. 961, c. 354, provides that no corporation shall issue stocks
or bonds except for money and labor done, or property actually received
for lawful corporate purposes, and section 44 provides that a corporation
may increase or reduce its capital stock in the manner therein provided,
but not beyond any maximum or minimum prescribed by general law.
Gas Commission Law, Laws 1905, p. 2097, c. 737, § 12, provides that
stocks or bonds shall not be issued by a corporation thereafter formed
which is subject to the supervision of the commission until the commis-
sion certifies that they are reasonably required for corporate purposes.
Petitioner gas company purchased its plant, and thereafter made large
·expenditures in enlarging and removing its plant to another location, and
.a part of the old plant was necessarily dismantled and rendered useless
in changing the location. *Held*, that the company was bound to give the
public reasonable service, and, if the growth of its business required in-
·creased facilities and there was a fair prospect of enlarging its business,
it was not required to continue the use of the old plant, and could issue
·stock and bonds necessary to erect a new plant commensurate with its
needs, even though a part of such indebtedness resulted from dismantling
.the old plant.

**7. SAME.**

   Stock Corporation Law, Laws 1890, p. 1073, c. 564, § 42, as amended by
Laws 1901, p. 961, c. 354, provides that no corporation shall issue stocks
or bonds except for money, and labor done, or property actually received
for lawful corporate purposes, and section 44 (page 1074) provides that a
corporation may increase or reduce its capital stock in the manner therein
provided, but not beyond any maximum or minimum prescribed by general
law. Gas Commission Law, Laws 1905, p. 2097, c. 737, § 12, provides that
stocks or bonds shall not be issued by a corporation thereafter formed·
which is subject to the supervision of the commission until the commission
certifies that they are reasonably required for corporate purposes. When
petitioner gas company purchased its plant, there was an indebtedness
thereon of some $50,000 which has since been paid from the surplus earn-
ings of the company; the stockholders having received no dividends and
the surplus earnings having been applied to the payment of indebtedness.
*Held*, that as the surplus earnings belonged to the stockholders, from
which they had a right to receive dividends, they having discharged the
corporate indebtedness with such earnings, they are now entitled to issue
new stock of the company for the debts so paid.

Appeal from Special Term.

Application by the Watertown Gaslight Company for consent to
issue bonds to the amount of $500,000 and $300,000 stock. From an
order of· the commission of gas and electricity, permitting the com-
pany to issue $150,000 of stock and $450,000 of bonds for the payment
of indebtedness, the company appeals. Order modified, and stock and
bonds directed to be issued as stated.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCH-
RANE, and SEWELL, JJ.

Brown, Carlisle & McCartin (Elon R. Brown, of counsel), for ap-
pellant.

William S. Jackson, Atty. Gen. (William V. Cooke, Deputy), for
Public Service Commission.

Isaac R. Breen, for city of Watertown.

JOHN M. KELLOGG, J. Section 42 of the stock corporation law
(chapter 564, p. 1073, Laws 1890), as amended by chapter 354, p. 961,
Laws 1901, provides "that no corporation shall issue either stock or
bonds except for money and labor done or property actually received
for the use and lawful purposes of such corporation"; and section 44
of said act provides that a corporation may increase or reduce its capi-
tal stock in the manner therein provided, but not above the maximum
or below the minimum, if any, prescribed by general law governing
corporations formed for similar purposes. Section 12 of the gas com-
mission law (chapter 737, p. 2097, Laws 1905) provides that stock or
bonds shall not be issued by any corporation thereafter formed, which
is subject to the supervision of the commission, until the commission
shall certify in writing as to the amount of stock or bonds reasonably
required for the purposes of the corporation, and that an existing cor-
poration shall not increase its capital stock or bonded indebtedness
without the consent in writing of the commission, and that for the pur-
poses of such section the commission may take and hear testimony and
examine the books and papers of the corporation, and require verified
statements from the officers thereof pertaining to the value of the prop-

erty and franchise owned and operated by such corporation. Prior to the gas commission law the corporation itself was practically the judge of what bonds and stock were required for the purposes of the company. Section 42 of the stock corporation law, which permitted the issue of stock for property and labor, provided that the stock should be considered full paid, and, in the absence of fraud in the transaction, the judgment of the directors as to the value of the property purchased was conclusive. The fact that the directors of the company might fix the value upon property turned into the company and paid for by stock was a prolific source of stock watering and of fictitious securities issued by corporations. Section 12 of the gas commission law was intended to make the consent of the commission to the issue of new stock and bonds a certain check upon the directors and stockholders of such companies. While the gas commission law is silent as to what shall guide the commission in consenting to the issue of stock and bonds, except the general provision that it shall be reasonably required for the purposes of the company, section 42 of the stock corporation law is a further guide which limits the issue for property purchased, labor done, or money supplied to the company. The gas commission, therefore, is charged with the duty, when its consent is asked for the issue of new stock or bonds, of determining whether such stock and bonds are to be issued for property, labor done, or money, and for the reasonable requirements of the company. The duties of the commission are administrative to enforce upon the companies the observance of the provisions of the law. The Legislature had the right to put such duty upon the commission, and to prohibit the issue of stock and bonds until the commission approved of such issue as being within the reasonable requirements of the company. With reference to new companies, section 12 of the gas commission law prescribes the condition upon which the certificate may be issued—that is, that the stock and bonds are reasonably required for the purposes of the corporation—and I think, within the fair meaning of the section, the same provision applies to an increase of stock or bonds in case of an existing company. I think, therefore, the constitutionality of this provision of the gas commission law cannot be successfully assailed. Trustees of Saratoga Springs v. Saratoga Gas, etc., Co., 122 App. Div. 203, 107 N. Y. Supp. 341, reversed 191 N. Y. 123, 83 N. E. 693.

In October, 1903, this company had a capital stock of $100,000, a bonded indebtedness of $50,000, and notes outstanding of $10,000. The present owners paid $187,500 for the capital stock. In 1907, at the time the order in question was made, the plant had been enlarged and improved, and the location of the producing plant changed at an actual cost to the company of about $450,000. The commission evidently considered the plant worth its cost when purchased, and allowed the expenditures actually made, thus bringing the total cost of the plant as it now is to the present stockholders of about $700,000. But it finds that much of the old plant was dismantled and scrapped, which became necessary by the change of location of the plant, and it fixed the present value of the plant at $600,000, and consented to its capitalization at that figure. The record discloses that the new capitalization permitted covers only the par value of the stock $100,000, the bonded in-

debtedness $50,000, and the actual cost of the changes and improvements to the property $450,000, entirely overlooking the indebtedness on account of the $10,000 note. The evidence does not disclose the cost of the old plant or its value, except we may infer its value from the purchase price. The present owners paid $87,500 over the par value of the stock, which does not seem an unreasonable price when we consider the earnings of the company hereinafter referred to. The fact that the stock was worth and sold for a premium of $87,500 furnishes no reason why such sum should be capitalized, or why the company should be permitted to issue new stock or bonds against that sum. It does not appear what surplus, if any, the company then had, nor what dividends it had paid prior to the purchase. There is, therefore, no basis upon which an increase of stock could properly be permitted on acocunt of the value and situation of the property of the company at the time the stock was purchased. The directors of a company still are the agents and-trustees of a corporation, and have the control and management of its affairs for the benefit of the stockholders and the reasonable service of the public; and, until it is shown otherwise, there is a presumption that their acts were honest and in the best interests of the company. There is no finding and no evidence of any fraudulent or improvident action in changing the location or providing for the enlargement of the plant, and, if some of the old plant was necessarily dismantled, it gives no reason why the increase of capital should not be allowed for the money necessary for the erection of the new plant and improvements. The company is bound to give to the public a reasonable and fair service; and, if the growth of the city and business calls for increased facilities, and there was a fair prospect of further increase, the company had a right and it was its duty to prepare to meet the present and prospective demands upon it. It was not required to continue the use of the old plant when the necessary enlargement made it proper for the interest of the company to change its plant. An application of this kind is usually made before the money is expended. If this application had then been made and it had appeared that an enlarged plant was necessary, and that the true interests of the company required and the public would be better served by changing the location of the plant, thus rendering a part of the present plant useless, it would have been unreasonable to refuse the company permission to issue securities to raise the necessary funds to make the required improvements simply because some of the old plant would be rendered useless, or to require the stockholders to reimburse the company from their own pockets for the part of the old plant so retired from use. Such practice would prevent all improvement and would be injurious to the public and to the company. We may fairly assume that, if it had appeared to the commission that $450,000 additional capital was required to make the contemplated improvements, the consent of the commission would have followed as a matter of course, and that the application would not have been denied simply for the reason that such improvements would render useless some of the existing property of the company. In good faith the company have met the expenses, and, instead of asking capitalization to cover the estimated costs of the improvements, now asks to be reimbursed for the actual cost. In ap-

proximate figures the company owed $60,000 in 1903 and has spent $450,000 for new property and the enlargement and the improvement of the plant since, making a total obligation to be met of $510,000. But its present indebtedness is about $432,000, from which it appears that about $58,000 of indebtedness has been paid from the net earnings of the company. The stockholders have drawn no dividends or profits for themselves, but have expended the net earnings of the company, to which they were justly entitled as stockholders, to pay off the indebtedness existing against the company. The amount of the capitalization reasonably required for the purposes of the company, according to the evidence and findings, are old capital stock $100,000, bonds $50,000, and notes $10,000; old capitalization $160,000, new expenditures $450,000; total capital requirements $610,000. As stated before, most of the old debt has been retired from the surplus earnings; but the surplus earnings belong to the stockholders who have received no dividends or profits from the company, and the dividends which should have come to them have been used in payment of the debts of the company. As a matter of fairness, there is no reason why they should not now receive the capital obligation of the company for the debts which they have thus paid.

It was suggested on the argument that, if any increase in the capitalization is allowed over that permitted by the commission, it be divided as between the bonds and stock in the proportions fixed by the commission. Capitalization of the company, therefore, should be allowed as follows: Stock $152,500, bonds $457,500, which are to issue only upon the terms and conditions fixed by the commission in the order appealed from.

The order should be modified, and the commission is therefore ordered to consent to the issue of such stock and bonds upon the terms stated. No costs are allowed. All concur, except COCHRANE, J., who votes for affirmance.

---

### In re DUFFY'S WILL.

(Supreme Court, Appellate Division, Second Department. June 18, 1908.)

2. SAME—PROBATE—EVIDENCE.
 Evidence held to show the due execution of a will, the testamentary capacity of testator, and the absence of undue influence, authorizing the probate thereof, though offered for probate 30 years after its alleged execution and death of testator.
 [Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 697–728.]

