BATCHELLOR v. OLMSTED et al.

(District Court, W. D. New York. October 15, 1919.)

No. 150–B.

CORPORATIONS ☞316(1)—POWERS OF DIRECTORS IN SETTLEMENT OF CLAIMS.

A transfer by order of the directors of a corporation of stock in a subsidiary corporation, organized to exploit a patent, to an officer of the company as agreed payment for services in organizing the subsidiary and conducting its business, *held* within the scope of their authority and valid.

In Equity. Suit by Fred G. Batchellor, receiver of the Buffalo Pitts Company, against John M. Olmsted and Margaret P. Olmsted. Bill dismissed, and decree for defendants on counterclaim.

Locke, Babcock, Spratt & Hollister, of Buffalo, N. Y., for complainant.

White, Babcock & Means, of Buffalo, N. Y. (Edward P. White, of Buffalo, N. Y., of counsel), for defendants.

HAZEL, District Judge. This action in equity was brought by the receiver of the Buffalo Pitts Company to have canceled as null and void the transfer of certain shares of the capital stock of the Ætna Combustion Company by the Buffalo Pitts Company to the defendants, and for an accounting of dividends paid. The answer avers that the shares of stock so issued consisted of 400 shares, of the par value of $100 per share, transferred in consideration of services performed by the defendant John M. Olmsted in organizing the Ætna Combustion Company, and for services performed prior thereto in connection with the exploitation and development of the Vraalstad & Doyle patent, No. 829,779, relating to hydrocarbon furnaces—a patent owned by the Buffalo Pitts Company. A counterclaim is also alleged of $2,100.-04, the balance of a credit on the books of the Buffalo Pitts Company for services rendered and expenses incurred.

Since the submission of this case for decision, the receiver, having rendered his account in the action in which he was appointed, has been finally discharged, the claims against the insolvent estate, except the claim in controversy, have been paid in full, and the Buffalo Pitts Company repossessed of the plant, assets, and all property in the custody of the receiver. Hence an order has been entered, on stipulation, substituting the Buffalo Pitts Company as plaintiff herein in place of Fred G. Batchellor, as receiver, and providing that such company abide by and perform any judgment which shall be recovered herein by John M. Olmsted, precisely as if it had been the original plaintiff in the action.

The evidence substantially discloses that during the ownership by plaintiff in 1908 of the Vraalstad & Doyle patent in question there arose a desire to exploit and develop the hydrocarbon furnaces therein described and with that end in view a license was granted to one Martin, who thereafter sublicensed certain railroad companies, for which the plaintiff company afterwards received royalties. At that time the defendant Olmsted, an officer of the plaintiff, was instructed to perform services with relation to existing claims for royalties against the Southern Pacific Railway Company and the Santa Fé Railroad Company, which claims were finally paid. Differences regarding the settlement of royalties arose between the plaintiff and Martin, its licensee, with the result that the existing license agreement was terminated, and in 1910, after negotiations conducted largely by Olmsted, a new company was organized to exploit the patent—the Ætna Combustion Company—the defendant Olmsted becoming the president thereof. In recognition of the services rendered in the formation of such company, and in consideration of his promotion of the enterprise, it was stated by Carleton Sprague, chairman of the board of directors of the Buffalo Pitts Company, now deceased, that Olmsted should receive capital stock in the company amounting to $40,000 out of an issue of $200,000, exclusive of stock amounting to $100,000 which was to be held in the treasury of the plaintiff. Certificates of stock were thereafter issued and dividends paid to defendant in conformity with this arrangement.

While president of the Ætna Combustion Company, the defendant Olmsted had charge of its affairs at Buffalo, carried on correspondence

with Martin, the general manager, who lived in California, counseled and advised with reference to licensing locomotives to use the patent furnaces, endeavored to acquire the Heintzelman & Camp patents for hydrocarbon furnaces, which were interfering with the licensing of the Vraalstad & Doyle patent, and performed other services of a substantial nature. The Buffalo Pitts Company, however, did not transfer the 400 shares of stock to the defendant Olmsted until January 21, 1914, when a resolution was passed at a meeting of the board of directors of the Buffalo Pitts Company to make such transfer, and transfers to Gomez and Moen, who also performed services in the development of such patent and in the organization of the Ætna Combustion Company. The resolution states that the transfer of such stock was made pursuant to a previous arrangement that the defendant Olmsted, Gomez, and Moen should exploit such letters patent outside of their general business relations with the plaintiff company; that through their efforts an agreement was entered into with Martin, the licensee, which led to the organization of the Ætna Combustion Company, which had taken over the patents and had issued its capital stock to the Buffalo Pitts Company. Reference was made to negotiations for adjustment of the claims of the defendant Olmsted, Gomez, and Moen in connection with the services rendered, namely, "The exploitation and development of such letters patent through the medium of the Ætna Combustion Company," for which they had consented to accept the stock allowed to them in the resolution as compensation in full for their services.

It is now contended by plaintiff that the admissions contained in the resolution with reference to the performance of services in developing the patent were untrue, that the plaintiff was incapable of entering into such an agreement, that its board of directors was without power to distribute such stock for services, that no services were in fact rendered by Olmsted entitling him to the transfer of any stock, or that no agreement existed to compensate him for his services, which in reality were rendered as officer and director of the plaintiff company. These various contentions, however, are not maintainable, under the proofs. There is abundant evidence showing that Olmsted performed the specified services pursuant to an understanding between him and Carleton Sprague that he was to be remunerated in shares of stock substantially as provided in the resolution of the board of directors.

The assertion that the stock was intended to compensate for selling the patent right to outside parties, and that, since such patent rights were not actually sold, no compensation was earned, is not substantiated. Nor is it proven that Olmsted was to direct his efforts to uniting the Heintzelman-Camp interests with the interest of the plaintiff in the development and exploitation of such oil-burning furnaces, for which he was to receive such compensation. It is true that in the proposed agreement, prepared by John B. Olmsted on the day before the adoption of the specified resolution, it was stated that other patent interests were to be united, and that Olmsted should use his efforts to unite conflicting interests to form a new corporation, which should own and control such patents, but from such embodiment in the proposed

resolution the court cannot determine that the transfer of the stock depended upon such a consummation since in another paragraph it is stated that pursuant to the understanding John M. Olmsted had succeeded in organizing the Ætna Combustion Company for the purposes named, and "which had been successful in securing said contracts, which have proved profitable." It is not to be assumed that it was intended that the stock should be transferred only in case Olmsted brought together conflicting interests or sold the patent right to outside parties. Certainly the resolution passed on the day after the preparation of the proposed resolution, and which was unacceptable in phraseology, plainly negatives any such assumption.

As indicative of the intention to transfer the stock for services rendered in forming the new company and acquiring a surrender of the Martin license, Olmsted testified that Mr. Carleton Sprague, though having promised a bonus in case the patent rights were sold to the American Locomotive Company, had in addition voluntarily said that for defendant's past and future efforts he was to have an interest in the corporation equal to Martin's, to whom 400 shares were also transferred. It seems to me that Mr. Sprague's letter to Mr. Gomez of January 24, 1912, is somewhat corroborative of Olmsted's claim. In the letter of the following day, true enough, allusion is made to Olmsted's selling "the whole thing, or stock, etc. * * * There was nothing definite ever talked; * * *" but it must be conceded that subsequently Mr. Carleton Sprague unqualifiedly agreed to the passage of the resolution upon which Olmsted places reliance in substantiation of his claim. The passage of the resolution by the board of directors and the transfer of stock in pursuance thereof were corporate acts, which cannot be repudiated, in view of the services rendered. The action of the board of directors was unquestionably within the scope of their authority, and for what they at the time considered the best interests of the company. In re Watertown Gaslight Co., 127 App. Div. 462, 466, 111 N. Y. Supp. 486.

The remuneration in question may have been, and doubtless was, most generous, perhaps far in excess of the value of the services rendered; but this court cannot concern itself under the proofs with an estimate thereof. The acceptance of the shares of stock was a closing of the transaction, and an accord and satisfaction of any claim existing against both the plaintiff and the Ætna Combustion Company by the defendant Olmsted for services rendered. There was credited to Olmsted on the books of the plaintiff the sum of $5,177.87, of which $2,100.04 is still due him.

It follows, from the foregoing, that the complaint against the defendants should be dismissed, and that the defendant John M. Olmsted should have a decree upon his counterclaim against the complainant, besides costs. So ordered.