SADIE MARKSON, Appellant, *v.* MARKSON'S FURNITURE STORES, INC., Respondent.

(Argued March 14, 1935; decided April 16, 1935.)

*Willard R. Pratt* for appellant.

*Ralph Shulman* for respondent.

FINCH, J. This is an action brought upon an agreement made in April, 1929, whereby the defendant, a domestic corporation, promised the plaintiff that if she survived her husband it would pay her the sum of " One Hundred Dollars ($100.00) each and every week during her natural life or as long as she or any of her descendants owned any of the stock of Markson's Furniture Stores, Inc." The plaintiff alleges that on the 22d day of June, 1929, her husband died and thereafter the defendant duly performed said contract until the 23d day of July, 1932, at which time the defendant refused to continue the pay-

ments. The plaintiff also alleges that upon the death of her husband she became the owner of his shares of stock in said corporation and is now the owner and holder thereof.

The defendant admits the execution of the agreement, the death of Louis Markson, the husband of the plaintiff, that the plaintiff is a stockholder of the defendant corporation and that the defendant paid the plaintiff as alleged. In addition, the defendant alleges, by way of confession and avoidance, that the contract is without consideration and unconscionable, and sets up as a counterclaim a demand for the repayment of the sum of $15,900 paid to the plaintiff pursuant to the agreement. The defendant also sets up a separate defense and counterclaim, on the ground of *ultra vires*.

Upon the trial it appeared that the defendant was a family corporation, the stock of which was entirely held by the Markson family. Louis Markson, the husband of the plaintiff, held corporate stock of the value of $90,000. His brother Samuel held $90,000. Another brother, Isaac Markson, held $3,000, and E. Tuder Williams, a son-in-law of Louis Markson, held $10,000. The buildings and real estate occupied by the corporation were owned jointly by Louis and Samuel Markson, subject to the inchoate rights of dower of their wives, Sadie Markson and Ida Markson, and leased by them to the defendant at a rental of $12,000 a year.

On March 25, 1929, at a meeting of the board of directors, a new lease was proposed for the property occupied by the corporation, at the same rental which it had theretofore been paying; a proposed agreement was signed for the purchase of the stock of E. Tuder Williams; proposed agreements between the corporation and Sadie Markson, the plaintiff herein, and Ida Markson, the wife of Samuel Markson, were discussed, and the meeting adjourned for the purpose of communicating with Isaac Markson, the absent director, as to whether these agree-

ments should be executed. On April 8, 1929, a meeting was held, at which Samuel Markson reported that he had communicated with Isaac Markson and " everything was all satisfactory."

It appears from the minutes of April 8th that a five-year lease, with privilege of renewal for five years by the lessee, between the corporation and Louis and Samuel Markson and their wives, was ratified and confirmed. The minutes show that the agreements between the corporation and the wives of Louis and Samuel Markson were duly signed and executed, Louis Markson signing on behalf of the corporation in the agreement with the wife of Samuel Markson, and Samuel Markson signing for the corporation in the agreement with this plaintiff. The agreement with the plaintiff is as follows:

" WHEREAS, Markson's Furniture Stores, Inc., a domestic business corporation of Utica, N. Y., has this day executed a lease with Louis Markson, Samuel Markson, Sadie Markson and Ida Markson, owners of the property and building which said corporation now occupies and,

" WHEREAS, Sadie Markson, Ida Markson, Louis Markson and Samuel Markson, owners of said property, rented said property to Markson's Furniture Stores, Inc., at a reduced rental for a term of years, and,

" WHEREAS, Sadie Markson has performed numerous and varied services for said corporation,

" Now, THEREFORE, in consideration of One Dollar ($1.00) and other good and valuable consideration and in consideration of the covenant heretofore described it is hereby mutually understood and agreed between the parties hereto that after the death of Louis Markson, if his wife Sadie Markson shall survive him, the said Markson's Furniture Stores, Inc., shall pay and hereby agrees to pay to the said Sadie Markson the sum of One Hundred Dollars ($100.00) each and every week during her natural life or as long as she or any of her descendants own any

of the stock of Markson's Furniture Stores, Inc. It being understood that the stock referred to which the said Sadie Markson or her descendants or heirs may own shall be the stock or part of the stock now owned by Louis Markson, her said husband.

" It is further mutually understood and agreed that the said Sadie Markson shall not be compelled to perform any services in connection with the operation or carrying on of said business. It being hereby understood and represented that the said Sadie Markson is entitled to said sum of One Hundred Dollars ($100.00) per week as aforesaid for the services she and her said husband are rendering to said corporation."

It is clear that there was ample consideration for the agreement. The contract expressly recites as consideration the leasing of the property at a reduced rental. No attempt has been made to contradict this, the defendant merely pointing out that the rental remained unchanged. Considering that the corporation was given a long-term lease at the same rental as before, in the face of a rising market, it is evident that there was consideration adequate to support the contract. The plaintiff joined in the lease and was a party to the contract. Even if no consideration moved from the plaintiff, there was sufficient consideration in the making of the lease by her husband to support the promise to the plaintiff. (*Rector, etc., St. Mark's Church* v. *Teed,* 120 N. Y. 583; *Seaver* v. *Ransom,* 224 N. Y. 233; *Buchanan* v. *Tilden,* 158 N. Y. 109; *Lawrence* v. *Fox,* 20 N. Y. 268.)

The defense of *ultra vires* is also of no avail. In view of the fact that these very premises were utilized as the place of business of the defendant and have been so used for several years, no question of *ultra vires* would seem to arise. Furthermore, it appears that express assent to the contract was given by all the stockholders except Isaac Markson, who held but $3,000 of the shares in this $250,000 corporation. Isaac Markson tacitly assented to

payments made under the contract for a period of three years and, therefore, is estopped by laches to object at this time. (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159.)

In discussing the principle involved, Judge FOLGER said: " The instance put in *Bissell* v. *Mich. So., etc., R. R. Co.* (22 N. Y. 269) is illustrative. A bank has no authority from the State to engage in benevolent enterprises; and a subscription, though formally made, for a charitable object would be out of its powers; but it would not be otherwise an illegal act; yet if every stockholder did expressly assent to such an application of the corporate funds, though it would still be in one sense *ultra vires*, no wrong would be done, no public interest harmed; and no stockholder could object, or claim that there was an infringement of his rights, and have redress or protection." (*Kent* v. *Quicksilver Mining Co., supra,* at p. 186.)

The court at Special Term relied upon the case of *Alexander* v. *Equitable Life Assur. Society* (233 N. Y. 300). The resemblance between that case and this is superficial only. There, as here, the corporation agreed to pay an annuity to the wife of one of its officers; but with that the similarity ends. The only consideration cited in the *Alexander* case was services already rendered and future services which Alexander was already bound to perform. No valid consideration having been given for it, the contract was declared unenforceable. In that case there was also lacking the element of express consent or estoppel.

The cases of *Caldwell* v. *Mutual Reserve Fund Life Asn.* (53 App. Div. 245) and *Beers* v. *New York Life Ins. Co.* (66 Hun, 75) are also not in point. In both those cases it was decided that the contracts made by the insurance company worked a fraud upon the policyholders. In the case at bar the contract was not made in fraud of creditors. It may be that the rights of the assenting stockholders have been impaired by the contract, but there is no evidence that it endangers in any way the rights of creditors.

It follows that the judgments should be reversed and judgment directed for the plaintiff, with costs in all courts.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur.

Judgment accordingly.