Henry A. Hudson, J.
The above-entitled action came on for trial before the court without a jury. No evidence was introduced but the matter was submitted upon an agreed statement of facts and upon certain documentary evidence submitted upon stipulation.
The action was instituted by the plaintiff as administratrix of the estate of her husband, William 0. Hughes, against W. O. Hughes Coal Co., Inc. and Charles B. Connor to recover the proceeds of a certain policy of insurance dated November 2,1940 in the principal sum of $7,500, or in the alternative that the court should declare and impose a lien upon the $7,500 proceeds of such insurance policy for the benefit of the corporation in the sum of $6,560.34, that being the amount paid as premiums from the date of the policy’s issuance, March 13,1933 until the death of Hughes.
The plaintiff to this end contends that the premiums had been paid with corporate funds, without any corporate action or authority; that such premiums represented the individual indebtedness of Hughes and Connor"; that they had no right to use corporate funds for the payment of individual debts and that consequently such payments were ultra vires and void.
The plaintiff further contends that the defendant, Charles B. Connor, collected the proceeds of such policy individually upon the death of William O. Hughes and that inasmuch as he stood in *682 a fiduciary capacity as an officer and director of the corporation, he has violated his duty to the corporation of collecting the proceeds in its behalf and instead had wrongfully diverted and converted the money to his own use and benefit and to his unjust enrichment at the expense of and to the detriment of the corporation and its stockholders. Consequently, the plaintiff contends that the court should declare and impress a lien in the sum of $6,560.34, in favor of the corporation.
It is the contention of the defendant that the payment of the insurance premiums by the check of the corporation did not constitute an assumption by the corporation of the personal indebtedness of Connor and Hughes nor a payment of their debts by the corporation but rather that it was a matter of convenience and that Connor and Hughes in every instance reimbursed the corporation for the payments which were made; that Exhibit 2 is a record of such payments; that the payments were made with the knowledge and consent of Hughes over a long period of years; that together, Hughes and Connor held at least 96% of the stock of the corporation and that the plaintiff’s intestate is estopped from questioning the procedure which was followed. The defendant further contends that there is no proof whatsoever of fraud or wrongful acts upon the part of the defendant Connor.
Prom an examination of the stipulation of facts and the exhibits and documents submitted, it appears without dispute and I so find, that William 0. Hughes and Charles B. Connor were brothers-in-law, having married sisters; that each had held 24 shares of the capital stock of the W. 0. Hughes Coal Co., Inc.; that their wives had each held one share of the stock; that for all practical purposes the said Hughes and Connor each had control of one half of the capital stock of the corporation; that the corporation had been in existence since at least March 13, 1933; that Hughes and Connor had been associated in the coal business in Borne, New York, during all that period of time; that they had been in sole charge of the operation and conduct of the business sometimes referring to themselves as a firm and sometimes as partners; that both were officers of the corporation after March 13, 1933; that in the Spring of 1933 Hughes and Connor took out a policy of insurance with the Travelers Insurance Company in the sum of $10,000; that it was dated March 13,1933; that the application form was signed March 30, 1933; that the first premiums were paid in May, 1933; that on November 2, 1940 a new policy was issued to take the place of the one dated March 13,1933 under which the principal amount was reduced from $10,000 to $7,500; that it was an ordinary life *683 policy; that the effective date was specified on the face thereof as March 13, 1933; that the policy was shown to be payable to the survivor of Charles B. Connor and William 0. Hughes who were designated as the insured; that the premiums on the policy were paid by the check of the corporation from the time of its original issuance in 1933 until the date of the death of William 0. Hughes; that such payments were made by the defendant, Charles B. Connor with the knowledge and consent of William 0. Hughes; that all entries in the books were made by Charles B. Connor with the knowledge and consent of William 0. Hughes; that Exhibit 1 was the checkbook of the corporation for a portion of the period in question; that similar checkbooks with similar entries as far as the subject matter of this action is concerned were kept during the entire period; that a ledger marked, Exhibit 2 was also kept by Charles B. Connor in the regular course of the business of the corporation, with the knowledge and consent of William 0. Hughes; that only the last page and inside back cover constituted Exhibit 2 and are pertinent to the issues here under consideration; that while the written stipulation provided that a photostatic copy of the policy bearing date March 13, 1933 was attached to the stipulation, the photostatic copy attached was of the policy issued November 2, 1940; that such photostatic copy contained photostatic copies of the original application and is sufficient, in my opinion, for a determination of the issues and that Form 43970, which is attached to the policy contains the following statement dated October 29,1940 above the signatures of Charles B. Connor and William 0. Hughes: 11 In consideration of issue of the new contract and effective upon delivery thereof, the aforesaid original contract is hereby released and surrendered to The Travelers Insurance Company, Hartford, Connecticut, together with right, title, claim, interest and benefit which the Undersigned have or may have thereunder; and the undersigned do hereby certify and declare that no person, firm or corporation other than those joining in this release have cmy interest or right therein or any title, legal or equitable, in whole or in part thereto. (Emphasis supplied.)
I am satisfied from the stipulation of facts and other evidence submitted and so find, that while the W. 0. Hughes Coal Co., Inc. was, as a matter of law, a corporation, Connor and Hughes each controlled 50% of the capital stock and conducted the business for all practical purposes as a joint venture, some times referring to the business as a firm and some times to themselves as partners. This is established to my satisfaction by the photostatic copies of the two original application blanks dated March 30, *684 1933 and signed by Connor and Hughes in which question and answer “ 4 ” of each reads: “Insurance applied for $10,000. Joint Lives — Ordinary Life.”
Question and answer “ 6 ” reads: “ At my death the insurance shall be payable to my Executors, Administrators or Assigns unless a named beneficiary is herein designated Estate.”
Question and answer “ 7 ” reads: “ State your occupation Member of Firm- — ■ W. 0. Hughes Coal Co.— Office Duties Only.”
Question “17” (Application of Charles B. Connor) reads: ‘ ‘ For Home Office Indorsement Only * * * 6. Beneficiary stated as William 0. Hughes Partner. 5-3-33 Contract re-written as per amendment form 43970, copy attached to contract. 11-2-40.”
Question “ 17 ’’(Application of William 0. Hughes), reads: ‘ ‘ For Home Office Indorsement Only * * * 6. Beneficiary stated as Charles B. Connor, Partner 5-3-33 Contract rewritten as per amendment form 43970, copy attached to contract. 11-2-40.”
I am satisfied from the stipulation of facts and other evidence submitted and so find, that the bookkeeping records of the W. O. Hughes Coal Co., Inc. were very sketchy, and that while the size of the business is not specified, no other inference can be drawn except that it was a small family business conducted by two brothers-in-law in the nature of a joint venture instead of as an actual partnership or corporation. The court will take judicial notice that many such business establishments exist in nearly every community and that although assuming corporate form, the niceties of corporate accounting and bookkeeping are customarily overlooked and ignored usually being considered unnecessary for practical business purposes.
Such records also show to my satisfaction and I so find, that the course of conduct of Hughes and Connor in paying the insurance premiums by checks of the corporation had been followed by them regularly from the payment of the first premium in May, 1933 until the final payment before Hughes ’ death; that the relationship of the parties with respect to their interest in the policies as joint beneficiaries, had been maintained from May, 1933 until the policy was paid; that the statement on Form 43970 dated October 26, 1940 was binding on both Hughes and Connor and their personal representatives and indicated that they considered the W. O. Hughes Coal Co., Inc. had no interest in the proceeds of the policy and that they solely had an interest therein,
I am also satisfied and so find, that Exhibit 2 contains a record of the reimbursement of the corporation by Hughes and Connor as claimed by Connor for the premium payments made *685 with the checks of the corporation. Although sometimes paid in installments, Exhibit 2 shows the payment of sums identical in amount to the insurance premiums due on the policies of March 13,1933 and November 2, 1940.
I am satisfied and so find, that there is no evidence that the payment of the insurance premiums by the checks of the corporation were detrimental to the interests of the stockholders, the creditors of the corporation or to the general public.
I am satisfied and so find, that there is insufficient evidence to establish the plaintiff’s contention that the relationship between Hughes and Connor was that of partners; that they secured the insurance policies as partners; that they paid individual debts with corporate funds to avoid tax liability and reduce normal corporate profits; that dividends were not declared; that they exchanged credits on advances for personal indebtedness; that the insurance premiums were paid with corporate funds without corporate authority and that there was no consideration for the payment of the premiums moving to the corporation.
The fact that a small family corporation is not legally required or expected to be conducted by its officers, directors and stockholders with the same degree of care and responsibility as those of a large corporation with many stockholders and extensive operation is made clear in Litwin v. Allen (25 N. Y. S. 2d 667, 678): “ It has been said that a director is required to conduct the business of the corporation with the same degree of fidelity and care as an ordinarily prudent man would exercise in the management of his own affairs of like magnitude and importance. General rules, however, are not altogether helpful. In the last analysis, whether or not a director has discharged his duty, whether or not he has been negligent, depends upon the facts and circumstances of a particular case, the kind of corporation involved, its size and financial resources, the magnitude of the transaction, and the immediacy of the problem presented. A director is called upon 1 to bestow the care and skill ’ which the situation demands. New York Cent. Railroad Company v. Lockwood, 17 Wall. 357, 382, 383, 21 L. Ed. 627.”
Likewise the court cannot assume that the acts of the directors are dishonest, fraudulent or not in the best interests of the corporation. In fact, there is a presumption, in the absence of evidence to the contrary, that the acts of the directors were proper. (Matter of Watertown Gas Light Co., 127 App. Div. 462.) In this case, the court stated (p. 466): “ The directors of a company still are the agents and trustees of a corporation, and have the control and management of its affairs for the benefit of the stockholders and the reasonable service of the public, and, *686 until it is shown otherwise there is a presumption that their acts were honest and in the best interests of the company.”
I am also satisfied and so find, that there is no proof of fraud or wrongful acts upon the part of either Hughes or Connor in their conduct of the affairs of the W. 0. Hughes Coal Co., Inc.
I am also satisfied and so find, that William 0. Hughes, through his knowledge of and consent to the acts of Charles B. Connor in keeping the records, Exhibit 1 and Exhibit 2 and in signing the Form 43970 was estopped from questioning the manner in which such records were kept or of the effect thereof or of the payments therein indicated upon his rights as a stockholder of the corporation and that through him, the plaintiff as his administratrix, is likewise estopped. (S. F. S. Realty Co. v. Adrian & Co., 159 Misc. 26; Markson v. Markson Furniture Store, 267 N. Y. 137; Bulger v. Colonial House of Flushing, 281 App. Div. 847.)
I am also satisfied and so find, that the plaintiff in any event has failed to establish the cause or causes of action set forth in the complaint by a fair preponderance of credible evidence and that the defendants are entitled to judgment dismissing the complaint, with costs.
Finding's of fact and conclusions of law in accordance with this decision may be submitted.